J-S54040-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                    :           PENNSYLVANIA
                                    :

              v.                         :
                                    :

MARQUES ALLEN CURRY          :
                                    :

          Appellant          :     No. 466 WDA 2018

Appeal from the Judgment of Sentence March 13, 2018
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0001421-2017

BEFORE: PANELLA, J., LAZARUS, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:           FILED SEPTEMBER 13, 2018

Marques Allen Curry (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of illegally possessing a firearm.[1] We affirm.

Appellant was on parole on May 25, 2016, when his parole agent, Derek Eberhart, conducted a routine home visit at Appellant's registered address, 126 Pershing Court. N.T., 3/6/18, at 33-34. Agent Eberhart testified that on April 15, 2016, both he and Appellant executed a Home Agreement Provider Letter (Letter), which "indicates the address that [the Parole Board] will be supervising, you know, whoever the person may be, [the] address [where] they will be residing." Id. at 34. The Commonwealth moved for the admission

_____

[1] 18 Pa.C.S.A. § 6105(a)(1).

of the Letter into evidence and Appellant's counsel responded, "No objection to Exhibit 1, Your Honor." Id. at 34-35; Commonwealth Exhibit 1.

Without specifying the reason, Agent Eberhart testified that during the home visit, a "need arose" for a search of the residence. Id. at 35. Agent Eberhart enlisted the assistance of another parole agent, Pat Hudock, as well as the Uniontown City Police. Agent Eberhart recovered a .40 Glock firearm, magazines and bullets from a second floor bedroom. The bedroom also contained Appellant's expired driver's license and "other pieces of mail with his name and information on them." Id. at 36. As a result, Appellant was charged with illegally possessing a firearm.

A two-day jury trial commenced on March 6, 2018 and concluded with Appellant's conviction. On March 13, 2018, the trial court sentenced Appellant to five to ten years of imprisonment. Appellant filed a timely appeal. Both Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Appellant presents two issues for our review:

1. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ALLOWING A TRIAL EXHIBIT TO GO TO THE JURY, WHEN THE EXHIBIT WAS TESTIMONIAL IN NATURE AND WAS MORE PREJUDICIAL THAN PROBATIVE.

2. WHETHER THE EVIDENCE WAS LEGALLY AND FACTUALLY SUFFICIENT TO PROVE THAT APPELLANT COMMITTED THE CRIME OF POSSESSION OF A FIREARM.

Appellant's Brief at 4.

In his first issue, Appellant argues that the trial court committed reversible error by allowing a trial exhibit, the Home Provider Agreement Letter (Letter), to go to the jury. Commonwealth Exhibit 1. Appellant concedes that the exhibit was introduced and admitted at trial, and "contained a signature from Appellant, and listed an address at the residence where the alleged firearm was found." Appellant's Brief at 9. However, he argues that the Letter was "testimonial in nature," and thus the trial court should not have allowed it to go unredacted to the jury during deliberations. Id. at 11. Appellant maintains that the Letter was more prejudicial than probative, and caused him to be convicted as a result of a parole violation, "and not the direct result of proof of guilt, beyond a reasonable doubt, that he was in possession of a firearm." Id. at 14-15.

The Commonwealth counters that the Letter was properly admitted and given to the jury because it confirmed Appellant's address, his signature, and Appellant's acknowledgment "that he could not live in a home where firearms are, much less possess one." Commonwealth Brief at 4. The Commonwealth emphasizes that the Letter was admitted into evidence without objection, and contrary to Appellant's contention, avers that the exhibit was more probative than prejudicial. Id.

> The admission of evidence is within the discretion of the trial court.
>
> In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of that evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material

fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

Commonwealth v. Storey, 167 A.3d 750, 758 (Pa. Super. 2017) (citation omitted).

Pennsylvania Rule of Criminal Procedure 646 states that "[u]pon retiring, the jury may take with it such exhibits as the trial judge deems proper. . ." Pa.R.Crim.P. 646. "Whether an exhibit should be allowed to go out with the jury during its deliberation is within the sound discretion of the trial judge." Commonwealth v. Barnett, 50 A.3d 176, 194 (Pa. Super. 2012), appeal denied, 63 A.3d 772 (Pa. 2013). Our standard for review where the document provided to the jury is a trial exhibit is whether the trial court abused its discretion in permitting the jury access to such document. Commonwealth v. Bango, 685 A.2d 564, 565 (Pa. Super. 1996), aff'd, 742 A.2d 1070 (Pa. 1999). Instantly, we discern no abuse of discretion.

As noted, the Letter was admitted into evidence without objection. After the jury retired to deliberate, the trial court and counsel discussed which exhibits would be sent to the jury. The trial court stated:

> Does somebody want to grab the exhibits and we will go through them?
>
> How about this, we will send them all out except if one of you objects to it going out, then we will rule on that.

N.T., 3/7/18, at 58.

Appellant then objected to the Letter going to the jury, arguing that "it has a lot of detail about firearms and things in there. The conditions of his

parole. I think that would be more prejudicial to him. I think that would confuse the jury." Id. at 59. The court responded that the Letter "was admitted because it is very relevant on the issue of the residence." Id. The following exchange ensued:

> [APPELLANT'S COUNSEL]: I see a lot in there about firearms, about how [Appellant] is not supposed to be around them, got to make sure that they are not in the house.
>
> [COMMONWEALTH]: It goes to the evidence, Your Honor. Knowingly possessing a firearm is the second element of the offense.
>
> [APPELLANT'S COUNSEL]: I agree with that, but there are things that are going to violate him on parole that aren't at issue here.
>
> THE COURT: I have to agree [with the Commonwealth]. The paragraph on the issue, for the record, "I understand that the offender is not permitted to live in a residence where firearms or other weapons are kept including lookalike firearms, such as air rifles, starter pistols and toy guns. I hereby certify that no firearms, lookalike firearms or such other weapons are in this residence nor will any be brought into this residence as long as the offender is residing here." While that is not relevant as to the actual address, it certainly is relevant to the issue of his knowingly possessing or knowing that he was not permitted to possess a firearm, and certainly it does contain a signature, it does list the home provider's address as 126 Pershing Court. So, at this point, we feel that it is highly probative and that the probative nature of it outweighs the prejudicial impact.

N.T., 3/7/18, at 60-61.

Our review of the notes of testimony additionally indicates that Appellant never specifically requested that the Letter be redacted before being sent to

the jury.[2]   Further, our review of the Letter itself indicates that it is a one-page form generated by the Pennsylvania Board of Probation and Parole, entitled "HOME PROVIDER AGREEMENT LETTER" and dated April 15, 2016. The letter is signed by Appellant as the "principal owner or lessee" of 126 Pershing Court, and the parole agent, Derek Eberhart.   The boilerplate language of the Letter includes the following:

> I understand the offender is not permitted to live in a residence where firearms or other weapons are kept . . . I certify that no firearms . . . are in this residence nor will any be brought into this residence as long as the offender is residing there  . . .
>
> . . .
>
> I certify that I am the principal owner or lessee of this property . . .

Commonwealth Exhibit 1.

The trial court did not abuse its discretion in permitting the Letter to be sent to the jury.  Appellant did not object to the admission of the Letter and did not request that it be redacted before being sent to the jury.  Further, the trial court determined that the Letter was "highly probative" because it constituted an admission by Appellant that he resided at the residence where the firearm was found, and "included a certification that [Appellant] would not allow firearms to be brought into his residence."  Trial Court Opinion, 5/2/18, at 2.  The trial court found the Letter to be "extremely strong evidence of the 'knowing possession' mental state required as an element of the crime."  Id.

---

[2] Appellant's counsel did request redaction of Exhibits 2, 13, 14 and 15.  N.T., 3/7/18, at 61-64.

The trial court also found that the Letter "was very harmful to the defense, but not unfairly so." Id. For these reasons, we find no abuse of discretion by the trial court and thus no merit to Appellant's first issue.

In his second issue, Appellant argues that the evidence was insufficient to support his conviction for illegally possessing a firearm. In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

Commonwealth v. Franklin, 69 A.3d 719, 722-23 (Pa. Super. 2013) (internal quotations and citations omitted). The trier of fact – in this case the jury – is free to believe, all, part, or none of the evidence presented when

making credibility determinations. Commonwealth v. Beasley, 138 A.3d 39, 45 (Pa .Super. 2016). In deciding a sufficiency of the evidence claim, this court may not reweigh the evidence and substitute our judgment for that of the fact-finder. Commonwealth v. Williams, 153 A.3d 372, 375 (Pa. Super. 2016).

Instantly, the statute under which Appellant was convicted states:

(a) Offense defined.--
(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105.

Appellant argues that the Commonwealth failed to present sufficient evidence that he possessed the firearm because there were no fingerprints found on the firearm. Appellant's Brief at 16. Appellant concedes that his DNA was found on the magazine of the firearm, but emphasizes that testing showed DNA from "at least two (2) individuals." Id. Appellant also challenges the circumstantial evidence of his residency in the home where the firearm was recovered. He claims the evidence indicated that he was "simply visiting" the home, and references his "current ID card bearing a different home address." Id. at 17. Finally, Appellant references the admission of the Home Provider Agreement Letter, and claims that in the absence of the Letter's evidence of his parolee status, the jury could not conclude that he was a felon in possession of a firearm. Id. at 18. We are not persuaded by this argument.

Our review of the record supports the jury's finding that Appellant constructively – and illegally – possessed the firearm recovered from 126 Pershing Court.

> Illegal possession of a firearm may be established by constructive possession. Commonwealth v. Parker, 847 A.2d 745, 750 (Pa. Super. 2004). This Court has held:
>
>> When contraband is not found on the defendant's person, the Commonwealth must establish "constructive possession," that is, the power to control the contraband and the intent to exercise that control. Commonwealth v. Valette, 531 Pa. 384, 613 A.2d 548 (1992). The fact that another person may also have control and access does not eliminate the defendant's constructive possession…. As with any other element of a crime, constructive possession may be proven by circumstantial evidence. Commonwealth v. Macolino, 503 Pa. 201, 469 A.2d 132 (1983). The requisite knowledge and intent may be inferred from the totality of the circumstances. Commonwealth v. Thompson, 286 Pa. Super. 31, 428 A.2d 223 (1981).
>
> Commonwealth v. Haskins, 450 Pa. Super. 540, 677 A.2d 328, 330 (1996), appeal denied, 547 Pa. 751, 692 A.2d 563 (Pa. 1997). Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. Commonwealth v. Mudrick, 510 Pa. 305, 507 A.2d 1212, 1213 (1986).

Commonwealth v. McClellan, 178 A.3d 874, 878 (Pa. Super. 2018) (citations omitted).

Agent Eberhart testified to his perception that "at least three" people were residing at 126 Pershing Court: Appellant, Appellant's girlfriend (Kim Brown), Ms. Brown's daughter, and an infant child of Appellant and Ms. Brown. N.T., 3/6/18, at 40. He added that "as a part of his parole supervision, that's where [Appellant] was required to be living." Id.

Pennsylvania State Police Corporal Randy Mocello testified to working in forensic services and being a latent fingerprint examiner. N.T., 3/6/18, at 56. Corporal Mocello testified that "there were no identifiable latent prints found on" the .40 Glock firearm, magazines and bullets recovered from 126 Pershing Court. Id. at 64. However, Corporal Mocello also stated that "only five percent of the cases that I examine actually develop identifiable latent fingerprints." Id. at 64-65. He explained that "there is a myriad of reasons why you can destroy or why you wouldn't find latent fingerprints." Id. at 65.

Sabine Panzner-Kaelen, a forensic scientist and qualified expert in DNA profiling, testified to recovering DNA from the .40 Glock firearm, magazines and bullets. Ms. Panzner-Kaelen tested swabs from the .40 Glock and "the tops and bottoms of three empty Glock magazines." Id. at 87. The tests indicated DNA from more than one person. She stated:

> It was a mixture of at least two individuals and there was a major component to that mixture. That means that there was more DNA from one person there than the second person that was present. That major component actually matched the known reference sample from [Appellant] in eleven of the [twenty-four] areas tested.

Id. at 88-89.

Donald Gmitter testified to being a detective with the Uniontown City Police Department on May 25, 2016, when he was dispatched to assist in the search of 126 Pershing Court. After Agent Eberhart found the .40 Glock and magazines in the upstairs bedroom, Detective Gmitter was assigned with photographing the items. Detective Gmitter also photographed Appellant's

"identification or driver's license" and "a letter or some type of maybe a bill, but it was something that was mailed to [Appellant] at that address." N.T., 3/7/18, at 8. The detective testified that he subsequently "made contact" with Appellant, who gave the detective two addresses – one of which was 126 Pershing Court. Id. at 14-15.

Sharon Crissman, the Chief Deputy Clerk of Courts in Fayette County testified to Appellant's past criminal convictions. Because of his criminal history, Appellant was a person prohibited from possessing a firearm as proscribed in 18 Pa.C.S.A. §6105(a)(1). See id. at 25.

The Commonwealth rested after Ms. Crissman testified. Appellant was the sole defense witness. He testified that on May 25, 2016, he was residing at 241 South Mount Vernon Avenue, and not 126 Pershing Court. Id. at 27. However, he conceded that he was at 126 Pershing Court when Agent Eberhart arrived on May 25, 2016, and told Agent Eberhart that he resided at 126 Pershing Court "for a number of days." Id. at 28. Appellant explained that his girlfriend's mother leased the property, and his girlfriend and child resided there. Appellant denied the .40 Glock was his. He also testified that Agent Eberhart and Detective Gmitter testified untruthfully.

On this record, the jury convicted Appellant of illegally possessing a firearm. Our review confirms the trial court's determination that the evidence was sufficient to sustain the conviction. The trial court explained:

> [Appellant] was a multiply convicted felon with previous convictions for firearm possession. The "Glock" in question was

- 11 -

in the home where he resided, and it clearly met the definition of "firearm." His personal possession was further established by evidence that showed DNA matching his being on both the firearm and the magazine that belonged to it with probabilities thousands of times greater than the total population of persons who have ever inhabited the planet. The proof of each element far exceeded "beyond a reasonable doubt."

Trial Court Opinion, 5/2/18, at 2.

In sum, the record contains sufficient evidence – including the Letter, which was an admitted trial exhibit properly sent out to the jury – to support the jury's determination that Appellant illegally possessed a firearm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/13/2018