J-S27042-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JUSTIN CHARLES GREEN :
:
Appellant : No. 132 WDA 2019

Appeal from the Judgment of Sentence Entered January 8, 2019
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0002317-2016

BEFORE:   OLSON, J., OTT, J., and COLINS*, J.

MEMORANDUM BY COLINS, J.:                              **FILED JUNE 7, 2019**

Appellant, Justin Charles Green, appeals from the judgment of sentence of four and one-half to nine years' incarceration, imposed after his conviction at a bench trial of the offense of possession of a firearm by a prohibited person.[1]   After careful review, we affirm.

Appellant's conviction arises out of an incident on February 25, 2016, in Monessen, Pennsylvania, where police found a shotgun in a parked vehicle while investigating a 911 call report of a man waving a weapon.  Appellant was arrested and was charged with possession of a firearm by a prohibited person.  Appellant waived his right to a jury trial and was tried by the trial court without a jury.  At trial, the Commonwealth called four witnesses: the

_____

[1] 18 Pa.C.S. § 6105(a)(1).

*   Retired Senior Judge assigned to the Superior Court.

individual who placed the 911 call; two Monessen Police Department officers who responded to the 911 call, Lieutenant Schmidt and Lieutenant Yuhasz; and a firearms examiner, who testified that the shotgun was operable and capable of being fired. In addition, it was stipulated that Appellant is a person prohibited by 18 Pa. C.S. § 6105 from possessing firearms and that no fingerprints were found on the shotgun.

The individual who placed the 911 call testified that she called the police because she saw a person outside her apartment complex holding something that she believed, from his body language, was a weapon. N.T. at 25-26. She admitted, however, that she could not clearly see what the person was holding and that the object could have been something other than a firearm. *Id.* at 26-27. She did not give any testimony concerning the physical appearance or clothing of the person that she saw and did not identify Appellant as the person that she saw or testify that he was not that person. *Id.* at 23-27.

Lieutenant Schmidt testified that when he arrived at the apartment complex, he did not see anyone with a weapon, but that he found a dark colored Subaru SUV approximately four blocks away. N.T. at 30-32. Lieutenant Schmidt testified that the Subaru was parked away from the curb and obstructing the roadway and that he saw a shotgun in plain view in the Subaru. *Id.* at 32, 35-36. Lieutenant Schmidt further testified that he or Lieutenant Yuhasz called a towing company to tow the Subaru and that when the towing company arrived, Appellant approached the scene "yelling about

why we were towing his vehicle." *Id.* at 36-37. When Lieutenant Schmidt told Appellant that the Subaru was involved in a crime, Appellant stated that it was his girlfriend's car and that he did not have the keys, but Lieutenant Schmidt saw him holding a fob and unlocking and locking the Subaru with the fob. *Id.* at 38-39, 45-46. Lieutenant Schmidt testified that after the Subaru was towed and he and Lieutenant Yuhasz were at the police station, Appellant came to the police station and requested that the Subaru be released, referring to it as his vehicle and asserting that he did not park it in front of a driveway. *Id.* at 39-42, 47-48. Lieutenant Schmidt also testified that he tested the car key found on Appellant when he was arrested and it locked and unlocked the Subaru in which the shotgun was found. *Id.* at 42. On cross-examination, Lieutenant Schmidt admitted that he did not know who put the shotgun in the Subaru and did not see Appellant drive the Subaru or possess a gun that night. *Id.* at 43-44, 48.

Lieutenant Yuhasz testified that he did not find any person with a gun at the apartment complex, but that he was radioed by Lieutenant Schmidt to come to the location where Lieutenant Schmidt had found the Subaru. N.T. at 51-52, 56. Lieutenant Yuhasz testified that the Subaru was parked in front of a driveway and sticking out in the road and was unoccupied. *Id.* at 56-58. Lieutenant Yuhasz further testified that the front windows of the Subaru were down and that he saw a shotgun lying on the backseat of the vehicle. *Id.* at 57-58. Lieutenant Yuhasz seized the shotgun and took it to the police station,

but was called back to the scene by Lieutenant Schmidt. *Id.* at 62. When he returned to the scene, Appellant was there. *Id.* at 62-63. Lieutenant Yuhasz testified that he asked Appellant why there was a shotgun in the backseat and that Appellant acknowledged that there was a gun in the vehicle and stated that it was his girlfriend's shotgun and that she had a permit for it. *Id.* at 63, 85-88. After the Subaru was towed, Lieutenant Yuhasz returned to the police station and reviewed video footage from police cameras that monitor the apartment complex area. *Id.* at 64-66. The video footage, which was played at trial, showed a person wearing clothes that matched what Appellant was wearing that night getting in and out of the Subaru SUV and holding something in his hands that Lieutenant Yuhasz concluded looked like a long gun. *Id.* at 67-73, 75. Lieutenant Yuhasz testified that he concluded that Appellant, who had come to the police station, was the individual in the video and detained him. *Id.* at 74-75. Lieutenant Yuhasz also inspected the shotgun and found that it was loaded. *Id.* at 59. On cross-examination, Lieutenant Yuhasz admitted that he did not see Appellant put the shotgun in the Subaru. *Id.* at 78. Lieutenant Yuhasz testified that a registration check of the Subaru listed two women, and not Appellant, as the owners, but that the women listed as owners were members of Appellant's girlfriend's family. *Id.* at 79, 85.

The trial court found Appellant guilty. On January 8, 2019, following a presentence investigation, the trial court sentenced Appellant to four and one-

half to nine years' incarceration. This timely appeal followed. In this appeal, Appellant presents one issue for review, whether the Commonwealth presented sufficient evidence to prove that Appellant possessed or constructively possessed the firearm that the police found and seized.[2]

Our standard of review is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence

---

[2] Appellant states this issue in his statement of issues presented on appeal as as:

> Whether the Trial Court erred in determining the Commonwealth produced sufficient evidence to convict the Appellant of Possession of a Firearm by a Prohibited Person.

Appellant's Br. at 2. However, in both his Pa.R.A.P. 1925(b) statement of errors complained of on appeal and in the argument section of brief he has made clear that he challenges only the sufficiency of the evidence to prove the element of possession or constructive possession. Pa.R.A.P. 1925(b) Statement; Appellant's Br. at 7-11.

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014) (quoting *Commonwealth v. Estepp*, 17 A.3d 939 (Pa. Super. 2011)).

Possession of a firearm is an essential element of the offense of possession of a firearm by a prohibited person. 18 Pa. C.S. § 6105(a)(1); *Antidormi*, 84 A.3d at 757. The Commonwealth may prove this element not only by evidence that the defendant actually had the firearm on his person, but also by evidence sufficient to show constructive possession of the firearm or constructive joint possession with another person. *Commonwealth v. McClellan*, 178 A.3d 874, 878-79 (Pa. Super. 2018); *Commonwealth v. Bergen*, 142 A.3d 847, 851-52 (Pa. Super. 2016).

Constructive possession of a firearm is the power to control the firearm and the intent to exercise that control. *Commonwealth v. Parrish*, 191 A.3d 31, 36 (Pa. Super. 2018); *McClellan*, 178 A.3d at 878; *Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013). The fact that another person also has control and access does not negate the defendant's constructive possession. *McClellan*, 178 A.3d at 878-79; *Bergen*, 142 A.3d at 851-52; *Hopkins*, 67 A.3d at 820-21. Constructive possession may be proven by circumstantial evidence. *Parrish*, 191 A.3d at 36-37; *McClellan*, 178 A.3d at 878; *Commonwealth v. Smith*, 146 A.3d 257, 263 (Pa. Super. 2016).

Evidence that the defendant has been in a vehicle where a firearm is found is not sufficient by itself to prove constructive possession if the firearm

is in a location over which the defendant lacks control or there is no evidence that the defendant knew that the firearm was there. **Commonwealth v. Armstead**, 305 A.2d 1, 2 (Pa. 1973) ("mere presence in an automobile in which a weapon is found is not sufficient to prove that a defendant-passenger is in possession of the weapon," evidence was insufficient to prove constructive possession where there was no evidence that firearm was visible while defendant was in the car); **Parrish**, 191 A.3d at 37-38 (passenger in backseat of car who did not have keys to the car was not shown to have constructive possession of firearm under the passenger side front seat or firearm inside a black bag on the floor in front of the passenger side front seat where there was no evidence that passenger was aware that the firearms were in the car); **Commonwealth v. Heidler**, 741 A.2d 213, 216-17 (Pa. Super. 1999) (*en banc*) (gun in defendant's girlfriend's purse in car that defendant had been driving was not in defendant's constructive possession); **Commonwealth v. Boatwright**, 453 A.2d 1058, 1058-59 (Pa. Super. 1982) (front seat passenger was not shown to have constructive possession of gun found on the floor of the backseat of car where the car belonged to the driver's girlfriend and there was another passenger in the backseat where the gun was found).

Evidence that a firearm is in plain view in a vehicle that the defendant is driving, however, has been held sufficient to prove constructive possession. **Hopkins**, 67 A.3d at 819-21 & n.2 (evidence was sufficient to prove

constructive possession where defendant was driving car and gun was visible between passenger side front seat and center console, even though passenger testified that gun belonged solely to him); **Commonwealth v. Parker**, 847 A.2d 745, 751 (Pa. Super. 2004) (evidence was sufficient to prove constructive possession where defendant was driving car and gun was sticking out from under passenger side front seat, even though car was owned by defendant's girlfriend, not defendant); **Commonwealth v. Carter**, 450 A.2d 142, 144 (Pa. Super. 1982) (evidence was sufficient to prove constructive possession where defendant was driving car and gun was on floor in front of driver's seat).

Here, there was sufficient circumstantial evidence for the trial court as trier of fact to find that Appellant was driving the Subaru with knowledge that the shotgun was in the vehicle and accessible and available to him. Lieutenant Schmidt testified that Appellant had the keys to the vehicle, referred to the Subaru as his car, and referred to how he had parked it. N.T. at 37-38, 40-42. In addition, Lieutenant Yuhasz identified Appellant as the person shown in the video getting in the Subaru before it was driven toward the location where it was found with the gun inside. *Id.* at 67-68, 70-73. The shotgun was lying on the backseat, visible and accessible to any occupant of the vehicle. *Id.* at 32, 36, 58. While it was possible that another person could have put the shotgun in the Subaru after Appellant parked it, Lieutenant Yuhasz testified that Appellant, when told about the shotgun, acknowledged

that it was in the vehicle and asserted that it was his girlfriend's shotgun. ***Id.*** at 63, 85-88.

Accordingly, the evidence at trial was sufficient to support an inference that Appellant had the power to control and intent to exercise control over the shotgun and was therefore sufficient to prove constructive possession of the shotgun. ***Hopkins***, 67 A.3d at 820-21; ***Carter***, 450 A.2d at 144. The fact that Appellant was not the owner of the Subaru and that the shotgun may have been owned by his girlfriend did not make the evidence insufficient to prove constructive possession, as more than one person may have constructive possession of an item. ***McClellan***, 178 A.3d at 878-79; ***Bergen***, 142 A.3d at 851-52; ***Hopkins***, 67 A.3d at 820-21.

Because the evidence was sufficient to prove that Appellant possessed the firearm and Appellant does not dispute that the other elements of the offense of possession of a firearm by a prohibited person were proven, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/7/2019

- 9 -