J-A25005-17

2018 PA Super 14

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ERIC MCCLELLAN | : | |
| | : | No. 2014 EDA 2016 |
| Appellant | | |

Appeal from the Judgment of Sentence March 1, 2016
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0004322-2015,
CP-46-CR-0008053-2015

BEFORE:   OTT, J., STABILE, J., and STEVENS*, P.J.E.

OPINION BY STEVENS, P.J.E.:                    **FILED JANUARY 26, 2018**

Appellant, Eric McClellan, appeals from the judgment of sentence entered in the Court of Common Pleas of Montgomery County, which, sitting as finder of fact in Appellant's bench trial, convicted him of Persons Not To Possess, Manufacture, Control or Transfer Firearms.[1]  Herein, Appellant challenges the order denying his suppression motion and contends evidence at trial failed to prove he constructively possessed a handgun recovered from the basement of his family home.  We affirm.

_____

[1] 18 Pa.C.S.A. § 6105(a)(1).  The trial court also convicted Appellant on two additional charges, one for Possession of a Controlled Substance, 35 P.S. § 780-113(a)(16) and the other for Possession of Drug Paraphernalia, 35 P.S. §780-113(a)(32), but the Commonwealth subsequently *nol prossed* the drug offense convictions prior to sentencing.

_____

*   Former Justice specially assigned to the Superior Court.

On April 24, 2014, Agent Scott Dominick of the Pennsylvania Board of Parole was participating in a LCB/Norristown Police Department sweep of local bars in search of noncompliant and/or absconder parolees, when he saw one of his state parolees, Appellant, exiting a bar at 11:30 p.m. Agent Dominick stopped Appellant for violating two conditions of his parole, one imposing an 8:00 p.m. curfew and the other prohibiting his presence in a drinking establishment. N.T. 11/30/15 at 12-13. Appellant displayed no outward signs of alcohol consumption, but a frisk of his person produced $320 in cash, two cell phones, and a house key. N.T. at 19-20.

On suspicion that Appellant was engaging in other violations at the bar consistent with his history of drug dealing, Agent Dominick obtained permission to search Appellant's approved residence, his grandmother's home, from his supervisor, who was on the scene at the time. N.T. at 20. Appellant had, at the outset of his parole, also signed a parole agreement form consenting to warrantless searches of his residence. N.T. at 14-15.

Parole agents searched Appellant's grandmother's home while Norristown Police maintained a security presence inside without otherwise participating in or directing the search. N.T. at 21-22. Agent Dominick was familiar with the home, having previously conducted numerous routine field visits there, and he knew Appellant lived with his grandmother, father, and adult sister.[2] The parole officer went straight to Appellant's bedroom and

---

[2] Appellant's father testified that he was no longer living at the home in question on the night of the search. *See infra*.

uncovered from underneath his mattress a clear sandwich bag containing a trace amount of cocaine. N.T. at 22-23. A different parole officer went down to the finished basement and discovered a loaded firearm. N.T. at 61-63. Charges were filed.

On November 30, 2015, Appellant filed motion to suppress, which, after a hearing, the court denied. Appellant's bench trial ensued on the same day, ending with the court convicting Appellant on the above-mentioned charges. On March 1, 2016, the court imposed a standard range sentence of five to ten years' incarceration on the charge of persons not to possess. N.T., 3/1/16, 34-35. After the denial of post-sentence motions, this timely appeal followed.

Appellant presents the following questions for our review:

I. **WAS THE EVIDENCE INSUFFICIENT TO ESTABLISH BEYOND A REASONABLE DOUBT THAT APPELLANT HAD THE POWER TO CONTROL THE FIREARM AND THE INTENT TO EXERCISE THAT CONTROL, WHERE THE FIREARM WAS RECOVERED IN THE BASEMENT OF APPELLANT'S GRANDMOTHER'S HOME AND WHERE DNA TESTING REVEALED THAT MORE THAN ONE PERSON HAD HANDLED THE FIREARM?**

II. **DID THE SUPPRESSION COURT ERRONEOUSLY DENY APPELLANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE, WHERE THE FACTS AND CIRCUMSTANCES KNOWN TO THE PAROLE AGENT PRIOR TO THE SEARCH DID NOT ESTABLISH REASONABLE SUSPICION TO BELIEVE THAT THERE WAS CONTRABAND OR OTHER EVIDENCE OF VIOLATIONS OF THE CONDITIONS OF SUPERVISION INSIDE APPELLANT'S RESIDENCE?**

Appellant's brief at 6.

In his first issue, Appellant contends that DNA and circumstantial evidence offered to link him to the loaded handgun found in the basement was insufficient to prove beyond a reasonable doubt that he constructively possessed the gun, an element to the crime of Persons Not to Possess of which he was convicted. We disagree.

Our standard of review of sufficiency claims is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

Furthermore, the trier of fact, in this case the trial court, is free to believe, all, part, or none of the evidence presented when making credibility determinations. *Commonwealth v. Beasley*, 138 A.3d 39, 45 (Pa.Super. 2016). In deciding a sufficiency of the evidence claim, this court may not reweigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Williams*, 153 A.3d 372, 375 (Pa.Super. 2016).

Illegal possession of a firearm may be established by constructive possession. ***Commonwealth v. Parker***, 847 A.2d 745, 750 (Pa.Super. 2005). With respect to constructive possession, this Court has held:

> When contraband is not found on the defendant's person, the Commonwealth must establish "constructive possession," that is, the power to control the contraband and the intent to exercise that control. ***Commonwealth v. Valette***, 531 Pa. 384, 613 A.2d 548 (1992). The fact that another person may also have control and access does not eliminate the defendant's constructive possession.... As with any other element of a crime, constructive possession may be proven by circumstantial evidence. ***Commonwealth v. Macolino***, 503 Pa. 201, 469 A.2d 132 (1983). The requisite knowledge and intent may be inferred from the totality of the circumstances. ***Commonwealth v. Thompson***, 286 Pa.Super. 31, 428 A.2d 223 (1981).

***Commonwealth v. Haskins***, 677 A.2d 328, 330 (Pa.Super. 1996), ***appeal denied***, 692 A.2d 563 (Pa. 1997). Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. ***Commonwealth v. Mudrick***, 507 A.2d 1212, 1213 (1986).

To support his argument against constructive possession, Appellant points to evidence that the gun was found neither in his bedroom nor in a room containing any of his personal belongings, but, instead, in a basement used primarily by his father and otherwise accessible to the whole family.

The Commonwealth counters that DNA samples taken from the gun implicated Appellant and that the basement was furnished primarily as a common area, as evidenced by the presence of exercise equipment and a futon in the upright position with a TV opposite it on the day of the search.

With respect to DNA evidence adduced at trial,[3] the prosecution established that each of the four DNA swab samples taken from the gun produced a profile representing a mixture of at least three DNA contributors, from which group Appellant could not be excluded. N.T. 11/30/15 at 138. Because there existed the possibility that one or more members of Appellant's family were among the three DNA contributors, however, additional DNA testing and analyses were undertaken to assess the relative probability that Appellant, rather than a family member, contributed to the DNA mixture.

Of the four DNA samples taken from the gun in question, one yielded no conclusion and another, from the trigger, was more probable if it came from a relative of Appellant's and two unknown, unrelated individuals than if it came from Appellant and two unknown, unrelated individuals.

However, the two other DNA swab samples pointed more heavily to Appellant. First, it was determined that the DNA sample taken from the gun's grip was at least 384 times more probable if the sample originated from Appellant and two unknown, unrelated individuals than if it originated from a relative to Appellant and two unknown, unrelated individuals.[4] Therefore, the

_____

[3] At trial, Appellant lodged no objection to the admissibility of the Commonwealth's DNA evidence.

[4] Hence, the record belies Appellant's contention that DNA evidence failed to address the probability that a relative of Appellant's and two unknown, unrelated individuals had contributed to the mix. **See** Appellant's brief, at 29.

laboratory concluded there was "strong support" that Appellant contributed to this mixture.[5]

Testing of the DNA sample retrieved from the gun's magazine also yielded the conclusion that the DNA sample was at least 29 times more probable if the sample originated from Appellant and two unknown, unrelated individuals than if it originated from a relative to Appellant and two unknown, unrelated individuals.

Thus, we agree with the trial court that the DNA evidence strongly implicated Appellant as a possessor of the gun found in the basement of his approved residence. In this regard, the fact that other family members may have also handled the gun does not preclude Appellant's constructive possession of it, as the constructive possession concept allows for more than one possessor. *Id*. *See also Commonwealth v. Macolino*, 469 A.2d 132, 136 (Pa. 1983) (overturning ruling that would "provide a privileged sanctuary for the storage of illegal contraband. Simply by storing contraband in a place controlled by more than one party, a spouse, roommate, partner would render all impervious to prosecution").

As such, evidence establishing that Appellant was dealing drugs that he kept hidden in his bedroom of his approved home, had handled a gun

_____

[5] This same analysis also concluded that it was 1,000,000 times more likely that the DNA on the gun's grip belonged to Appellant and two unknown, unrelated individuals than if it originated from three unknown, unrelated individuals, thus lending "very strong support" that Appellant and two unknown, unrelated individuals contributed to this mixture rather than three unknown, unrelated individuals.

discovered in the basement of that home, and had unrestricted access to the basement was sufficient to prove the element of possession necessary to his conviction for Persons Not to Possess. Viewed in a light most favorable to the Commonwealth as verdict winner, such evidence went beyond showing he merely resided in a home where a gun was stored and knew of the gun's location; it established, instead, both his control and his intent to exercise control of the gun.

Appellant assails the Commonwealth's proffer in this regard by alluding to defense evidence offered to show that Appellant had no interest in the basement of his approved home. Such an argument goes not to the sufficiency of the evidence, however, but to the weight of the evidence, a claim that Appellant has raised in neither his Pa.R.A.P. 1925(b) statement nor his statement of questions presented. Accordingly, he has waived his weight of the evidence claim.

Even if he had preserved the claim, it would afford him no relief. The court, sitting as finder of fact at Appellant's bench trial, found the testimony of Appellant's father ("Father") incredible to the extent he attempted to disassociate his son completely from the basement where the gun was recovered. Specifically, Father claimed exclusive control of everything in the basement *except* the gun, which he attributed to his incarcerated cousin, Manuel McClellan. N.T. at 170-72. He did this by testifying that the basement was "my area," even though he no longer resided in the home, because he stored some personal items there. *Id*. When asked specifically about the

futon, however, under which the handgun was hidden, Father said only that his cousin Manuel slept there until his arrest, the obvious implication being that the gun found underneath the futon belonged to Manuel.

In arguing that the trial court erroneously rejected defense evidence that Appellant had no interest in the basement space that was essentially within the dominion of his father, Appellant asks us to do what we may not do, *i.e.*, disturb the credibility determinations of the finder of fact. **See Beasley**, **supra**; **Williams**, **supra**. For that reason, we would discern no abuse of discretion with the trial court's denial of Appellant's weight claim raised in his post-trial motion even if Appellant properly raised it for our review.

Here, the totality of evidence comprising DNA analysis of the gun and Appellant's access to the gun in a common area of his grandmother's home supported a finding of fact that he constructively possessed the gun. Discerning no error with the court's determination on this point, we conclude Appellant's sufficiency claim affords him no relief.

Next, we consider whether the lower court erred in denying Appellant's motion to suppress evidence obtained during the parole agents' search of his residence. We review the denial of a motion to suppress as follows:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the

Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa. Super. 2015) (citation, alterations, and ellipsis omitted).

Appellant filed a motion to suppress evidence obtained from the search of his home, which, he maintained, was unsupported by reasonable suspicion that he possessed contraband or was otherwise in violation of parole conditions. During his nine months on parole, Appellant argued, he kept every appointment, committed no violations, and never failed a drug test. He stressed that there was no evidence as to whether either phone in his possession contained texts, emails, or messages suggesting illegal activity.

Appellant's parole officer testified that Appellant's presence at a bar, his possession of a large amount of cash and two working cell phones, and his underlying criminal record involving violations of the Drug Act created reasonable suspicion that he was dealing drugs at the bar, which justified a search of his residence for drug-related contraband. The suppression court agreed that parole agents had reasonable suspicion to support a search of his home, hence, it denied Appellant's motion to suppress.

A parolee has limited Fourth Amendment rights because of a diminished expectation of privacy. ***Commonwealth v. Williams***, 692 A.2d 1031, 1035 (Pa. 1997). A "parolee's signing of a parole agreement giving his parole officer permission to conduct a warrantless search does not mean either that the parole officer can conduct a search at any time and for any reason or that the parolee relinquishes his Fourth Amendment right to be free from unreasonable searches." ***Id.*** at 1036.

***Commonwealth v. Coleman***, 130 A.3d 38, 45 (Pa. Super. 2015).

However, under 42 Pa.C.S. § 6153, "Supervisory relationship to offenders," an Agent of the Pennsylvania Board of Probation and Parole may conduct a warrantless property search "if there is reasonable suspicion to believe that the real or other property in the possession or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision[,]" subsection 6153(d)(2), and where, in the absence of exigent circumstances, prior approval of a supervisor is obtained, subsection 6153(d)(3). Subsection 6153(d)(6) also addresses the formulation of reasonable suspicion to support a property search without a warrant:

(6) The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:

(i) The observations of officers.
(ii) Information provided by others.
(iii) The activities of the offender.
(iv) Information provided by the offender.
(v) The experience of the officers with the offender.
(vi) The experience of officers in similar circumstances.
(vii) The prior criminal and supervisory history of the offender.

- 11 -

> (viii) The need to verify compliance with the conditions of supervision.

42 Pa.C.S.A. § 6153(d)(6).

Here, the facts as they relate to subsections 9912(d)(6)(i), (iii), (vii), and (viii) created reasonable suspicion to believe Appellant possessed contraband in his home. Specifically, Appellant was present in a bar late at night in violation of his parole conditions. Notably, it appeared to Agent Dominick that Appellant had not been drinking while at the bar, and he was otherwise found to have two working cell phones and a large amount of cash on his person, items associated with the drug trade. Viewed in conjunction with Appellant's prior history as a drug offender, Agent Dominick's observations and search of Appellant's person provided reason to suspect Appellant was dealing drugs in the bar, thus justifying the warrantless search for illicit drugs in his residence. Accordingly, we reject Appellant's challenge to the suppression order in question as meritless.

Judgment of sentence is AFFIRMED.

Judge Stabile joins the Opinion.

Judge Ott files a Concurring Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/26/18