J-S28006-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DASHAWN MCLENDON | : | |
| | : | |
| Appellant | : | No. 275 MDA 2018 |

Appeal from the Judgment of Sentence November 8, 2017
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0001475-2016

BEFORE:   BOWES, J., McLAUGHLIN, J., and STRASSBURGER*, J.

MEMORANDUM BY BOWES, J.:                          **FILED AUGUST 28, 2019**

Dashawn McLendon appeals from the aggregate judgment of sentence of seventy-two to 192 months of incarceration imposed following his convictions for violations of the Uniform Firearms Act.  We affirm.

Appellant's convictions stem from events occurring on the night of December 4, 2015, in Wilkes-Barre, Pennsylvania.  The victim, Ian Nieves, testified that he saw Appellant and Appellant's brother, Ibn McClain ("Co-defendant"), whom he knew from the area.  They approached his car and requested a ride.  Appellant entered the vehicle and sat in the front passenger seat, while Co-defendant sat in the rear passenger seat.  When Mr. Nieves stopped the car at their request, Co-defendant exited the vehicle and shot Mr. Nieves in the left shoulder.  When Mr. Nieves attempted to drive away with Appellant still in the car, Appellant shot Mr. Nieves in the leg.  A struggle over a firearm ensued, and the weapon fired and hit the car's windshield.  The car

___

*   Retired Senior Judge assigned to the Superior Court.

eventually crashed outside the home of someone Mr. Nieves knew, and Co-defendant came running and shooting toward the car. Appellant and Co-defendant fled. The police arrived at the scene, and ultimately determined that the firearm that was used to shoot Mr. Nieves in the leg was a Glock 37 .45 GAP (hereafter "Glock").

Appellant testified to a different story. According to Appellant, Mr. Nieves picked up Appellant after Appellant called to purchase cannabis. After Appellant paid for the drugs, Mr. Nieves indicated that he had to go retrieve them. Appellant demanded his money back, and Mr. Nieves refused. During the confrontation, Mr. Nieves brandished the Glock, the two struggled over it, and it fired twice. The vehicle crashed, Appellant left the vehicle, but went back to check on Mr. Nieves. Appellant took the Glock but left his money behind. Appellant then fled to a residence of a friend to whom he gave the Glock.[1]

After the encounter, Appellant and Co-defendant fled to Allentown, where they were found in a hotel room a few days after the incident as a result of cell phone pinging technology.[2] After requesting that Appellant and the

---

[1] On cross-examination, Appellant added Co-defendant into the story and acknowledged that Co-defendant had a revolver, although he claimed that he had not known earlier that Co-defendant was armed.

[2] In this case, cell phone pinging technology refers to the technology used by T-Mobile to provide Detective Shane Yellend with location information for the cell phone attributed to Appellant and Co-defendant. The company was able

other hotel occupants leave the room, the police obtained consent to a search of the hotel room from the third party in whose name it was registered. The Glock was retrieved from the room, along with ammunition for the weapon. Appellant and Co-defendant were arrested.

Co-defendant was a juvenile at the time of the events in question. He and Appellant were charged with attempted first-degree murder, conspiracy to commit first-degree murder, aggravated assault, conspiracy to commit aggravated assault, and violations of the Uniform Firearms Act.[3] Appellant filed a motion to suppress the physical evidence obtained in Allentown, arguing that there was no probable cause to validate the police's use of cell phone pinging technology, rendering the evidence collected at the hotel room illegally obtained. The trial court denied the motion after a hearing.

Appellant also filed a successful motion to sever his charge of possession of a firearm by a person prohibited. As a result, two separate jury trials were held. Specifically, Appellant was tried on that count by a different jury after Appellant and Co-defendant were jointly tried before a jury on the other

_____

to send emails to the detective with a longitude and latitude, with an uncertainty factor of five to 5,000 meters. *See* N.T. Trial, 8/24-27/17, at 235-36.

[3] Both Appellant and Co-defendant were charged with carrying a firearm without a license. Appellant was also charged with possession of a firearm by a person prohibited, while Co-defendant's remaining charge was possession of a firearm by a minor.

- 3 -

charges. On August 24, 2017, the first jury found Appellant not guilty of attempted murder and aggravated assault, but guilty of carrying a firearm without a license.[4] The second jury convicted him of possession of a firearm by a prohibited person on October 25, 2017.[5]

On November 8, 2017, Appellant was sentenced to eighteen to seventy-two months of incarceration for carrying a firearm without a license, and a consecutive term of fifty-four to 120 months of incarceration for possession of a firearm by a prohibited person. Appellant filed a timely post-sentence motion, which was denied. Appellant then filed a timely notice of appeal, and Appellant and the trial court complied with Pa.R.A.P. 1925(b).

Appellant presents four issues for our consideration:

I. Whether the evidence was insufficient to support a guilty verdict on Count V, prohibited possession of firearms by convicted felon.

II. Whether the evidence was insufficient of record to support a guilty verdict on Count VII, carrying a firearm without a license.

III. Whether the Appellant was tried within the timeframe set forth in PA. Rule of Criminal Procedure Rule 600.

IV. Whether the trial court improperly permitted the Commonwealth to use "Illegally Pinged" evidence at trial thus violating the Fourth Amendment to the United States

---

[4] The jury found Co-defendant guilty of aggravated assault and carrying a firearm without a license.

[5] The victim did not testify at the second trial, but the parties stipulated that Appellant possessed the Glock on the day in question, and Appellant testified to having taken it from Mr. Nieves to save himself from being shot.

Constitutions, the Pennsylvania Constitution and the Pennsylvania wiretapping laws.

Appellant's brief at 1.[6]

Appellant presents challenges to the sufficiency of the evidence for his convictions of carrying a firearm without a license and possession of a firearm by a prohibited person. A challenge to the sufficiency of evidence is a question of law, making our standard of review *de novo* and scope of review plenary. ***Commonwealth v. Neysmith***, 192 A.3d 184, 189 (Pa. 2018). "When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." ***Id.*** In so doing, we bear in mind that "the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." ***Commonwealth v. Smith***, 97 A.3d 782, 790 (Pa.Super. 2014) (cleaned up).

The statute defining the crime of carrying a firearm without a license provides, in relevant part: "any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person . . . without a valid and lawfully issued license under this chapter commits a felony of the third degree." 18 Pa.C.S. § 6106(a)(1). Appellant does not dispute that the

_____

[6] We note with displeasure that the argument section of Appellant's brief is not divided into as many parts as there are questions to be argued, with distinctive headings separating each part, as is required by Pa.R.A.P. 2119(a).

Commonwealth established that he lacked a license. Rather, Appellant contends that the evidence did not establish that he carried a firearm concealed on his person or in a vehicle.

Both Appellant and Mr. Nieves testified as to a struggle over a firearm in Mr. Nieves's car, and shell casings discharged from a Glock .45 were found in the car. N.T. Trial, 8/24-27/17, at 33-34, 294-95. Mr. Nieves said that he never had a gun, implying that Appellant had a firearm when he got into Mr. Nieves's car. *See id*.at 48. This testimony alone was sufficient to sustain the conviction.

Further, even if the factfinder believed that Appellant first came into possession of the Glock when he took it from Mr. Nieves, it could have concluded that Appellant later unlawfully possessed the weapon based upon the fact that the Glock and boxes of ammunition for it were recovered from the hotel room in which Appellant was arrested. *Id.* at 248. Hence, viewed in the light most favorable to the Commonwealth, the evidence and reasonable inferences drawn therefrom established that Appellant carried a firearm without a license.

We next consider Appellant's argument that the evidence at his second trial was insufficient to sustain a conviction of persons not to possess. That statute provides, in relevant part: "A person who has been convicted of an offense enumerated in subsection (b) . . . shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell,

transfer or manufacture a firearm in this Commonwealth." 18 Pa.C.S. § 6105(a)(1).

Appellant does not dispute that he was previously convicted of an offense that would prohibit him from owning a firearm. At the trial on this charge, the Commonwealth called police officer James Comey to testify, who stated that Appellant was arrested and convicted of possession with intent to deliver in 2014. N.T. Jury Trial, 10/25/17, at 65-66.

Nor does Appellant contest that the evidence at the second trial established that he had possession of the Glock at some point in time. Indeed, he stipulated to possessing it on the night in question. *See id*. at 26. Rather, he raises several arguments that the circumstances surrounding his control of the weapon did not amount to the type of possession prohibited by the statute.

For one, Appellant argues that any possession of the firearm would have been justified self-defense. Our legislature has codified the justification defense as follows:

> Conduct which the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable if:
>
> (1) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged;
>
> (2) neither this title nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and
>
> (3) a legislative purpose to exclude the justification claimed does not otherwise plainly appear.

18 Pa.C.S. § 503(a). This Court has held that "unlawful possession of a firearm is a continuing offense," meaning that one may be justified in possessing a firearm for some of the time of possession without being justified during the entire possession. ***Commonwealth v. Miklos***, 159 A.3d 962, 968 (Pa.Super. 2017).

We reject Appellant's justification arguments for the following reasons. The jury was free to disbelieve Appellant's story and instead conclude, based upon the Commonwealth's evidence, that the Glock was Appellant's gun. Specifically, the Commonwealth offered proof that Appellant's DNA was the major component of the DNA evidence found on the Glock, with a second contributor's DNA so insubstantial that it could not be matched. ***See*** N.T. Jury Trial, 10/25/17, at 58-59, 87-89. Further, Appellant fled the scene of the shooting in Wilkes-Barre, and the Glock was recovered in a hotel room that Appellant was occupying in Allentown, along with ammunition for the Glock.[7] ***Id***. at 90. As such, the jury was free to conclude that Appellant's self-defense testimony was false, and that the Glock was his weapon all along.

However, even if the jury believed Appellant's testimony that he did not possess the Glock until the conflict with Mr. Nieves, it could have reasonably concluded that the evidence nonetheless established Appellant's unlawful

---

[7] Appellant's version of the events of the night in question did not include a claim that he wrested a box of ammunition from Mr. Nieves along with the Glock during the struggle.

possession of it. As noted above, possession is a continuing offense, and the Commonwealth's evidence showed that Appellant continued to possess the Glock in a different city nearly a week after Mr. Nieves was shot. The jury thus may have reasonably found that Appellant possessed the Glock longer than needed to protect himself from Mr. Nieves.

Appellant also challenges the sufficiency of the evidence in that there was no competent evidence to prove that he purchased the Glock or "intentionally possessed" it for an extended period of time. Appellant's brief at 13. Nothing in the language of the statute requires possession for an extended timeframe or proof that the offender acquired the firearm through a purchase. *See* 18 Pa.C.S. § 6105(a)(1). Further, § 6105(a)(1) does not specify a *mens rea* of intentional possession. As it contains no express *mens rea* at all, Appellant is culpable if he acted intentionally, knowingly, or recklessly. *See* 18 Pa.C.S. § 302(c). The evidence previously discussed establishes Appellant's knowing possession of the Glock. *Accord Commonwealth v. McClellan*, 178 A.3d 874, 879-80 (Pa.Super. 2018) (holding that evidence was sufficient to support possession conviction where DNA evidence indicated that the appellant had handled a firearm that was found in an area of his residence to which he had access). Thus, we find no merit in Appellant's sufficiency arguments attacking his conviction under § 6105(a)(1).

Having concluded that Appellant's sufficiency challenges fail, we turn to his remaining claims of error. Appellant next alleges that his trials were not commenced within the timeframe provided by Pa.R.Crim.P. 600. The only appearance of a Rule 600 challenge in the record is a motion Appellant filed *pro se* on December 20, 2016. However, at that time, he was represented by counsel. As such, the *pro se* filing was a legal nullity. **See**, **e.g.**, **Commonwealth v. Nischan**, 928 A.2d 349, 355 (Pa.Super. 2007). Hence, no Rule 600 issue was raised in the trial court or preserved for our review. **See** Pa.R.A.P. 302(a). We agree with the trial court that the issue is waived.

Finally, we consider Appellant's claim that the trial court erred in denying his suppression motion. Appellant insists that by using cell phone pinging technology to gain information on Appellant's location, the police violated his Fourth Amendment rights and rights under the Pennsylvania Constitution. Appellant's brief at 9. He contends that as a result, the evidence found in the hotel room where he was arrested should have been suppressed or excluded. **Id**. at 10.

"An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **McClellan**, **supra** at 880 (internal quotation marks omitted). "Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of

the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." ***Id***. (internal quotation marks omitted).

Pursuant to the Fourth Amendment, "[w]hen an individual seeks to preserve something as private, and his expectation of privacy is one that society is prepared to recognize as reasonable, . . . official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause." ***Carpenter v. U.S.***, 138 S.Ct. 2206, 2213 (2018) (cleaned up). There are, of course, exceptions to the general warrant requirement, including when exigent circumstances such as pursuit of a fleeing suspect or protecting someone from imminent harm "make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment."[8] ***Id***. at 1222 (cleaned up). The

_____

[8] In considering whether exigent circumstances are present, a court considers the following factors:

> (1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is a strong reason to believe that the suspect is within the premises to be searched, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was peaceable, and (7) the time of the entry, i.e., whether it was made at night. These factors are to be balanced against one another in determining whether the warrantless intrusion was justified.

***Commonwealth v. Richter***, 791 A.2d 1181, 1185 (Pa.Super. 2002).

United States Supreme Court has recently held that the collection of cell phone location data is a search for purposes of the Fourth Amendment. *See id*. at 2217.

A person charged with a possessory offense has standing to seek suppression of evidence seized during a contested search. *Commonwealth v. Cruz*, 166 A.3d 1249, 1254 (Pa.Super. 2017). However, to prevail, he has the "burden to prove that he has both a subjective expectation of privacy and that the subjective expectation is one which society is willing to respect as legitimate." *Id*. at 1255.

Appellant contends that the pretrial motions court erred in permitting the Commonwealth to introduce so-called "illegally pinged" evidence at trial. Appellant's brief at 9. Appellant maintains that no probable cause or exigent circumstances existed in this case, and as such, all evidence obtained as a result of using cell phone pinging technology should be suppressed. Appellant's brief at 11.

At the pretrial motions hearing, the Commonwealth offered proof that Co-defendant had used his cell phone[9] to threaten his girlfriend, sending her a photograph of himself aiming a firearm at the camera, and that Co-defendant had absconded from juvenile probation. N.T. Pretrial Motions,

---

[9] The name of the subscriber for the cell phone in question was ultimately determined to be "Jack Roberts," who had no known association with Appellant or Co-defendant. *See* N.T. Pretrial Motions, 10/3/16, at 76.

10/3/16, at 23-24, 34. Additionally, Co-defendant's cell phone had been utilized in at least one of a series of armed robberies of taxi cabs, as well as to make false emergency calls to 911 to distract police. *Id*. at 47, 50-53.

Detective Shane Yelland testified that Mr. Nieves identified Appellant and his brother as the attackers on December 6, 2015. *Id*. at 66. Detective Yelland stated that he contacted the United States Marshal Service for assistance because of the defendants' criminal histories and the fact that they were armed. *Id*. at 55. On the cell phone in question, Detective Yelland testified that he filled out a T-Mobile exigent circumstance request form, indicating:

> Target phone number was calling false reports of shots fired possibly to ambush the responding officers. Target phone number called a taxi company and robbed the driver by gun point. Target phone number was involved in a shooting that led to victim shot twice. Investigators received credible information that robbers who utilized target phone numbers are planning to finish off the victim.

*Id*. at 54.

The pretrial motions court found the Commonwealth's witnesses credible. The court found that a male caller, using the cell phone that was eventually pinged, was making false police reports contemporaneously with the shooting, as well as during other crimes that were committed in the area. The pretrial motions court also accepted that the police believed that the cell phone from which the taxi call was made belonged to Co-defendant. Additionally, the court acknowledged the fact that Co-defendant was facing a

warrant for an unrelated crime. That court further found that law enforcement completed an exigent circumstance report form for T-Mobile, and eventually began receiving cell phone location data for the cell phone linked to the brothers.

The court further found that police and U.S. Marshals conducted surveillance in Allentown, conducted a traffic stop on a vehicle, and learned from the driver that Appellant and Co-defendant were in a hotel. Finally, the court also determined that police obtained consent to search the room they were in from the person to whom the room was rented, Abdul Khairi.

On matters of law, the pretrial motions court concluded there was probable cause to believe that Appellant and Co-defendant attempted to murder Mr. Nieves. That court also found that law enforcement had reasonable suspicion to believe Appellant and his co-defendant were armed. Also, that court concluded that law enforcement had probable cause and exigent circumstances to warrant tracking the real time location data of Appellant and his Co-defendant through the cell phone.

From our review of the record, we are not at all convinced that Appellant established an actual, subjective expectation of privacy in the location of Co-defendant's cell phone. Indeed, at the outset of the hearing, the Commonwealth questioned Appellant's privacy interest in the cell phone, representing that Appellant did not own it. N.T. Pretrial Motions, 10/3/16, at 18. Appellant responded by stating that he had a privacy interest in the hotel

room, which was violated when "the police penetrated the walls of his domicile[.]" *Id*. As the evidence showed that the cell phone company obtained location data through the normal operation of the cell phone and then emailed the information to Detective Yelland, we fail to see how Appellant's stated privacy interest in the hotel room was violated.[10] *Cf. Kyllo v. United States*, 533 U.S. 27, 34 (2001) (holding that the use of thermal-imaging technology to gain information about the interior of a home constituted a search implicating expectations of privacy). *See also Carpenter*, *supra* at 2216-17 (holding owner of phone maintains privacy interest in his location revealed "to **his** wireless carrier") (emphasis added).

Even if Appellant did have a subjective expectation of privacy interest in the location of Co-defendant's cell phone, our review of the record reveals that the court's findings and legal conclusions are sound. The Commonwealth established that it had ample reason to believe that Appellant and Co-defendant were armed and dangerous; Co-defendant and Appellant had been identified by two known victims as armed robbers and attempted murderers; the cell phone in question was involved in the criminal activity; Co-defendant and Appellant had fled Wilkes-Barre and delay in apprehending them could

---

[10] Although Appellant questioned whether U.S. Marshals used a "stingray" or "cell-site simulator," he offered no evidence that any such device was used to "penetrate the walls" of the hotel room to locate the phone. N.T. Pretrial Motions, 10/3/16, at 76-77, 18. Rather, as discussed above, Co-defendant's phone carrier supplied to detective Yelland the location information transmitted to it through the normal operation of the phone.

result in their continued evasion of capture; and there was no physical force involved in gaining the location data from Co-defendant's cell phone carrier. *See Commonwealth v. Richter*, 791 A.2d 1181, 1185 (Pa.Super. 2002) (applying factors for determining whether exigent circumstances justified a warrantless search).

The evidence produced of record, when assessed against the standard for probable cause and exigent circumstance factors discussed above, strongly supports the denial of Appellant's motion to suppress all evidence obtained as a result of locating Appellant and Co-defendant through the use of Co-defendant's cell phone location data.

Having determined that none of Appellant's issues merits relief from this Court, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judge Strassburger joins the memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 08/28/2019