J-A30044-18

NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| BRIAN KURT BANTUM, | : | |
| | : | |
| Appellant | : | No. 1476 WDA 2017 |

Appeal from the Judgment of Sentence August 31, 2017
in the Court of Common Pleas of Blair County
Criminal Division at No(s): CP-07-CR-0002204-2016

BEFORE:    SHOGAN, J., KUNSELMAN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:    FILED JULY 14, 2020

Brian Kurt Bantum (Appellant) appeals from the August 31, 2017 judgment of sentence imposed after a jury convicted him of person not to possess a firearm, theft by unlawful taking, receiving stolen property, and disorderly conduct. Counsel for Appellant has filed a petition to withdraw and brief pursuant to Anders v. California, 386 U.S. 738 (1967), and Commonwealth v. Santiago, 978 A.2d 349 (Pa. 2009). Upon review, we grant counsel's petition to withdraw and affirm Appellant's judgment of sentence.

We provide the following background. On the evening of October 5, 2016, Kenton Knepp was drinking with two friends, Jeffrey Cruthers and Gary O'Shell, at his apartment. N.T., 6/8/2017, at 62-63, 74. Shortly before 8:00 p.m., Knepp's next-door neighbor, Appellant, walked by Knepp's

*Retired Senior Judge assigned to the Superior Court.

apartment. Knepp invited Appellant inside to spend time with Knepp and his friends. Id. at 63, 74.

Within a half hour, it became apparent to Knepp that Appellant was highly intoxicated. Appellant was incoherent and stumbling around Knepp's apartment. Appellant knocked over several items from a kitchen shelf, breaking them, and almost knocked over Knepp's television. Id. at 63, 75-76. As a result, Knepp told Appellant to leave. Appellant did not leave, and Knepp and Cruthers attempted to escort Appellant out of Knepp's apartment. Id. at 64, 76-77. As they approached the front door, Appellant attempted to push back into the apartment and swung his fist at Cruthers. Knepp called for O'Shell's help, and the three men were able to push Appellant outside of the apartment and onto the porch. Id. at 64-65, 77-78.

In doing so, Appellant and Knepp both fell to the ground. Id. at 78. As Knepp fell, his firearm slipped out of the friction holster on his right hip. Knepp caught the firearm and placed it next to him as he pushed himself to standing with both hands. Id. at 68, 77-79, 89, 101. As soon as Knepp lifted his hand off the firearm to stand up, Appellant reached for the firearm and placed his hand on it. Id. at 79, 86, 90. Seeing this, Knepp immediately backed into his apartment, and closed and locked the door. Once inside, he told O'Shell and Cruthers that Appellant took his firearm and

called the police.[1]  Knepp peeked through the door shortly thereafter, and both Appellant and the firearm were gone.  Id. at 66, 79-80, 91-92.  Knepp, O'Shell, and Cruthers remained inside the apartment until police arrived and did not leave the apartment or porch that evening.  Id. at 66-67, 70, 80-81.  Knepp removed the holster from his hip after calling the police.  Id. at 82.

Police Officer Fred Wasser responded within minutes of the call and arrived at Knepp's apartment at approximately 8:00 p.m.  Upon arrival, Officer Wasser spoke to Knepp, O'Shell, and Cruthers on the porch of Knepp's apartment, all of whom appeared visibly afraid.  Id. at 106.  Simultaneously, Appellant's girlfriend was on the porch of Appellant's home, attempting to have a conversation with the three men.  Id. at 30-31, 107.  Police Officer Brian Miller arrived less than a minute later and spoke briefly with Knepp.  Officers Miller and Wasser then proceeded to Appellant's home.  Id. at 29, 66, 70, 107-08.

Appellant's girlfriend told the officers she did not know Appellant's location.  Id. at 31, 108.  She consented to Officer Wasser's request to search the residence for Appellant.  Officer Miller kept watch outside while Officer Wasser and a backup responding officer searched the interior of the apartment for Appellant to no avail.  Id. at 31-32, 108-09.

---

[1] Immediately before Knepp called the police, another neighbor, seeing the altercation on the porch, called the police for assistance.  As officers were on their way, they received a second dispatch, this one based on Knepp's call, that a firearm had been taken.  N.T., 6/8/2017, at 29, 105.

Officer Miller walked between Knepp's and Appellant's homes, and found Appellant in the rear of Appellant's home. Appellant was sitting in a chair next to the back door. A grill was to his right, within arms-reach. Officer Miller radioed to Officer Wasser that he had found Appellant. Id. at 32, 109. As Officer Wasser approached the rear yard from inside the house, Officer Miller ordered Appellant to show his hands. Appellant stood but failed to comply with Officer Miller's orders, instead fumbling with his hands inside his shirt and waistband. Id. at 33. Officer Wasser handcuffed Appellant from behind. Appellant was angry, oppositional, and attempted to walk away from Officer Wasser. Officer Wasser notified Appellant that he was being detained for theft of a handgun and provided him Miranda[2] warnings. N.T., 6/8/2017, at 34, 110-12.

Appellant denied any knowledge of a firearm. After patting down Appellant, Officer Wasser asked Appellant for the location of the firearm. Appellant appeared highly intoxicated: he repeatedly tried to step away, gritted his teeth, was unable to follow instructions or stay on a conversation topic, was thick-tongued, and emanated a strong odor of alcohol. Following more denials, Appellant ultimately told Officer Wasser, "Yeah, this isn't good. I'm going to take you to where the handgun is." Id. at 34-35, 37, 112-13.

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

Still handcuffed, Appellant led Officers Miller and Wasser back to Knepp's apartment. Knepp, O'Shell, and Cruthers remained on the porch while Appellant pointed out various locations within the apartment that he alleged contained the firearm. None of these locations turned up the missing firearm. Id. at 35-36, 81, 114-15. Inside the apartment, the officers located a holster, as well as several magazines for the missing firearm. The officers seized these items because the firearm was still missing. Id. at 54.

Appellant was detained in Officer Wasser's vehicle while Officers Wasser and Miller continued to search for the missing firearm. At the same time, neighbors searched their respective backyards for the missing firearm. Id. at 38-39, 115-17. Officer Wasser ultimately located the firearm under a tarp that was covering the grill in Appellant's backyard – the same grill that was within arms-reach of Appellant when he was first spotted by Officer Miller. Id. at 39, 55, 118-19.

The firearm was photographed, seized, and made safe. It was fully loaded, with a live round in the chamber. After securing the firearm, the officers confirmed that it belonged to Knepp and was the missing firearm. Id. at 40-41, 83, 119. Though initially the officers planned to return the firearm to Knepp that evening, it was ultimately retained for testing. No DNA or fingerprints were found on the firearm. Officer Miller's fingerprint was found on the magazine to the firearm from when he handled it while

preparing paperwork to return the firearm to Knepp that evening. Id. at 42-44, 57, 84, 120.

Appellant was arrested and charged with person not to possess a firearm, theft by unlawful taking, receiving stolen property, disorderly conduct, defiant trespass, public drunkenness, and three counts of harassment.[3] Appellant proceeded to a one-day jury trial on June 8, 2017, where the aforementioned facts were developed. Additionally, the parties stipulated that Appellant had a prior drug conviction that rendered him a person prohibited from possessing a firearm. Id. at 130. Appellant testified on his own behalf, stating that he did not take Knepp's firearm that evening or place it on his grill. At the conclusion of the trial, the jury found Appellant guilty as indicated above.[4]

On August 31, 2017, the trial court sentenced Appellant to an aggregate term of five to ten years of incarceration. On September 5, 2017, Appellant filed a post-sentence motion, challenging the discretionary aspects

---

[3] One charge of carrying a firearm without a license was dismissed prior to trial.

[4] By simultaneous bench trial, the trial court found Appellant guilty of the summary offenses of criminal trespass, public drunkenness, and harassment (as to Knepp and Cruthers), and not guilty of harassment (as to O'Shell). Order, 6/12/2017.

of his sentence and the weight of the evidence.[5]  By order filed September 12, 2017, the trial court denied Appellant's post-sentence motion.

This timely-filed notice of appeal followed.[6]  Appellant's counsel has filed an Anders brief and petition to withdraw as counsel.  Appellant did not file a response.  Accordingly, the following principles guide our review.

> Direct appeal counsel seeking to withdraw under Anders must file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous.  Counsel must also file an Anders brief setting forth issues that might arguably support the appeal along with any other issues necessary for the effective appellate presentation thereof....

---

[5] Although represented by counsel, Appellant also pro se filed a motion to modify sentence on September 8, 2017.  Because Appellant was represented by counsel, his pro se motion was a nullity.

[6] We do not fully recount the tortured procedural history of this case after Appellant pro se filed a notice of appeal because we have already detailed it in our several prior memoranda.  See Commonwealth v. Bantum, 209 A.3d 492 (Pa. Super. 2019) (unpublished memorandum) (denying prior counsel's petition to withdraw and remanding for (1) the trial court to rule on Appellant's weight-of-the-evidence claim under the correct standard of review; (2) new counsel to be appointed for Appellant; and (3) the inclusion of necessary materials in the certified record); Commonwealth v. Bantum, 221 A.3d 239 (Pa. Super. 2019) (unpublished memorandum) (denying current counsel's petition to withdraw for failure to comply substantially with the technical requirements of Anders, and directing counsel to file an advocate's brief or compliant Anders brief, petition to withdraw, and letter to Appellant advising him of his rights); Commonwealth v. Bantum, 222 A.3d 809 (Pa. Super. 2019) (unpublished memorandum) (same); Commonwealth v. Bantum, 226 A.3d 624 (Pa. Super. 2020) (unpublished memorandum) (same); Commonwealth v. Bantum, ___ A.3d ___, 2020 WL 1889115 (Pa. Super. 2020) (unpublished memorandum) (reminding counsel to file an advocate's brief or compliant Anders brief).  It suffices to say, the appeal is properly before this Court and is finally ready for review.

> Anders counsel must also provide a copy of the Anders petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed pro se or raise any additional points worthy of this Court's attention.
>
> If counsel does not fulfill the aforesaid technical requirements of Anders, this Court will deny the petition to withdraw and remand the case with appropriate instructions (e.g., directing counsel either to comply with Anders or file an advocate's brief on appellant's behalf). By contrast, if counsel's petition and brief satisfy Anders, we will then undertake our own review of the appeal to determine if it is wholly frivolous. If the appeal is frivolous, we will grant the withdrawal petition and affirm …. However, if there are non-frivolous issues, we will deny the petition and remand for the filing of an advocate's brief.

Commonwealth v. Wrecks, 931 A.2d 717, 720-21 (Pa. Super. 2007) (citations and unnecessary capitalization omitted). Our Supreme Court has clarified portions of the Anders procedure as follows.

> [I]n the Anders brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

Santiago, 978 A.2d at 361.

Based upon our examination of counsel's petition to withdraw and Anders brief, we conclude that counsel has complied substantially with the technical requirements set forth above. We first consider the issue raised by counsel, and then have the responsibility "to conduct a simple review of the record to ascertain if there appear on its face to be arguably meritorious

- 8 -

issues that counsel, intentionally or not, missed or misstated." Commonwealth v. Dempster, 187 A.3d 266, 272 (Pa. Super. 2018) (en banc).

The sole issue arguably supporting an appeal cited by counsel is whether there was sufficient evidence to sustain Appellant's convictions given the lack of DNA or fingerprint evidence from the firearm.[7] Anders Brief at 13-14.[8]

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of

---

[7] Counsel does not identify which conviction(s) Appellant wanted to challenge. Because Appellant's argument is that the Commonwealth failed to prove he was in possession of the firearm given the lack of DNA or fingerprint evidence, we construe this as a challenge to his convictions of person not to possess a firearm, theft by unlawful taking, and receiving stolen property.

[8] We observe that although counsel cited the standard of review for weight of the evidence in discussing Appellant's sufficiency-of-the-evidence claim in his letter to Appellant, he applies the correct standard of review to Appellant's sufficiency-of-the-evidence claim in the Anders brief. Compare Letter to Appellant, 5/4/2020, at 2 (unnumbered) with Anders Brief at 14-17.

proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Johnson, 192 A.3d 1149, 1155 (Pa. Super. 2018) (citation omitted).

Illegal possession of a firearm may be established by constructive possession. With respect to constructive possession, this Court has held:

When contraband is not found on the defendant's person, the Commonwealth must establish "constructive possession," that is, the power to control the contraband and the intent to exercise that control. The fact that another person may also have control and access does not eliminate the defendant's constructive possession.... As with any other element of a crime, constructive possession may be proven by circumstantial evidence. The requisite knowledge and intent may be inferred from the totality of the circumstances.

Commonwealth v. Haskins, [] 677 A.2d 328, 330 ([Pa. Super.] 1996)[]. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not.

Commonwealth v. McClellan, 178 A.3d 874, 878 (Pa. Super. 2018) (some citations omitted).

In the instant case, to prove Appellant possessed Knepp's firearm, the Commonwealth presented circumstantial evidence that Appellant was in constructive possession of the firearm. Knepp testified that Appellant took Knepp's firearm as Appellant was being forcibly removed from Knepp's

apartment. Officer Wasser ultimately located the firearm under a tarp that was covering a grill in Appellant's backyard – the same grill that was within arms-reach of Appellant when he was first spotted by Officer Miller upon responding to the scene. Knepp, Cruthers, and O'Shell did not leave Knepp's apartment or porch that evening between the initial altercation and the finding of the firearm. This testimony made it more likely than not that Appellant had possessed the firearm. Accordingly, viewed in the light most favorable to the Commonwealth as verdict winner, the evidence presented by the Commonwealth was sufficient to establish Appellant's possession of Knepp's firearm, notwithstanding Appellant's statements to the contrary or the lack of Appellant's DNA or fingerprints on the firearm.

Based upon the foregoing, we agree with counsel that a challenge to Appellant's convictions based on the sufficiency of the evidence is frivolous. Moreover, we have conducted "a simple review of the record" and have found no "arguably meritorious issues that counsel, intentionally or not, missed or misstated." Dempster, 187 A.3d at 272.[9] Accordingly, we affirm the judgment of sentence and grant counsel's petition to withdraw.

---

[9] In an earlier Anders brief, prior counsel considered and disposed of a weight-of-the-evidence claim. Because the trial court had applied the wrong standard of review in ruling on Appellant's weight claim, we remanded for, inter alia, a supplemental opinion ruling on Appellant's weight claim under the proper standard of review. See Bantum, 209 A.3d 492 (unpublished memorandum). The trial court complied by filing a supplemental opinion. Current counsel does not raise a weight claim in the Anders brief. Following
(Footnote Continued Next Page)

Judgment of sentence affirmed.  Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/14/2020

(Footnote Continued) ─────────────

our simple review, we conclude that there is no arguably meritorious weight claim in this case.