J-A23042-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KARON ARGRO | : | |
| | : | |
| Appellant | : | No. 683 EDA 2020 |

Appeal from the Judgment of Sentence Entered January 31, 2020
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0000401-2019

BEFORE: KUNSELMAN, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:         **FILED OCTOBER 26, 2020**

Karon Argro (Argro) appeals from the judgment of sentence imposed following his bench conviction in the Court of Common Pleas of Delaware County (trial court) of possession with intent to deliver a controlled substance (PWID), possession of a controlled substance and two counts of criminal conspiracy to commit the drug offenses.[1]  We affirm.

**I.**

On July 3, 2018, Pennsylvania State Police (PSP) Trooper Michael Magee was on routine traffic patrol in a marked police vehicle in full uniform at about 12:30 p.m.  While stopped at a red light, Trooper Magee observed a white

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 Pa.C.S. §§ 780-113(a)(30), (a)(16) and 18 Pa.C.S. § 903, respectively.

Chevrolet Malibu and determined by running its registration through the PennDOT database that it did not have a required temporary tag. The Malibu was occupied by three individuals, two in the front seat and one in the back seat. Trooper Magee initiated a traffic stop and the driver pulled over to the side of the road. As Trooper Magee entered the stop into the police mobile system, the rear passenger door of the Malibu opened. Trooper Magee directed the passengers to close the door and remain in the car using his police vehicle's public address system. The backseat passenger disregarded the order and fled north towards 11th street with a bag in his hand.

Trooper Magee approached the passenger side of the Malibu in an attempt to make contact with the two remaining occupants. However, the driver exited the vehicle and fled towards 11th street. Trooper Magee initially pursued him on foot and then radioed for backup and returned to the Malibu. By that time, the individual who had occupied the front passenger seat, later identified as Argro, had also fled the scene.

Responding police officers canvased the area and recovered twenty bundles of fentanyl inside of a black bag laying on the ground on 11th Street. The fentanyl was packaged in red, green and blue glassine bags. After obtaining a search warrant for the Malibu, police recovered a cellphone, a laptop and additional fentanyl in a clear bag. The drugs were pre-bundled, in bags of varying colors including red, 116 of which were unstamped and nineteen were stamped with the name "BAD HURT." (N.T. Trial, 12/05/19, at

16, 25; PSP Lab Report, 7/03/18). The unstamped bags were consistent with those found on 11th Street. Trooper Magee recovered the fentanyl from "the rear passenger side floor after [he] began to lift the rear seat cushion [and he did not know] if they were wedged in between the cushion and the side of the vehicle or stuff[ed] under the cushion itself." (*Id.* at 25; *see id.* at 28-29). There were no needles, spoons or other drug paraphernalia in the vehicle. A search of the cellphone and laptop found in the Malibu yielded no evidence of their users.

Videotape footage captured by Trooper Magee's dashboard camera was sent to surrounding law enforcement agencies. A local police officer identified Argro as the individual who fled from the front passenger seat of the Malibu. Trooper Magee confirmed this identification of Argro by reviewing photographs contained in the Pennsylvania Justice Network (JNET) database.

At Argro's December 5, 2019 bench trial, Detective Michael Skahill testified as an expert in the identification, sales and packaging of illegal drugs. Detective Skahill explained that he has made dozens of controlled purchases of heroin as an undercover agent and that he has worked with informants in making countless other controlled buys. He noted that the total number of bags of fentanyl recovered from the backseat of the Malibu and the 11th Street location totaled 405, worth approximately $4,000.00 in gross revenue. (*See id.* at 51-53). The detective testified that an individual user typically does not have such a large quantity of the drug. (*See id.* at 51, 53-54).

Detective Skahill also testified that users and traffickers usually deal with heroin and fentanyl packaged in blue bags and that, in this case, "the red bags [found in both locations] stick out like a sore thumb." (*Id.* at 57-58). He opined based on his training and experience that the fentanyl recovered in this case was held by drug traffickers for the purpose of selling it. (*See id.* at 54, 58-60). He testified that the dollar value of the drugs, combined with the lack of paraphernalia in the vehicle, support his conclusion, because in the "50 arrests of drug heroin folks . . . I [almost always] find some type of implement of usage within that vehicle . . . [such as] needle caps, torn off bags, rubber bands strewn about the car, the Ziplock bags. . . . (*Id.* at 59; *see id.* at 60). Detective Skahill explained that it is common for drug traffickers to work only with other individuals they trust because the narcotics trade is very risky and volatile, and any dealings with persons they are not close to increases exposure to robbery and law enforcement intervention. (*See id.* at 55, 60-61).

After considering the trial exhibits and testimony, the trial court found Argro guilty of the above-listed offenses on December 11, 2019. On January 31, 2020, the court sentenced Argro to an aggregate term of not less than sixty nor more than 120 months' incarceration, followed by five years of probation. Argro timely appealed. He and the trial court complied with Rule 1925. *See* Pa.R.A.P. 1925(a)-(b).

## II.

Argro's sole issue on appeal challenges the sufficiency of the evidence supporting his PWID and criminal conspiracy to commit PWID conviction.[2] He disputes the element of possession, arguing that the Commonwealth failed to demonstrate that he constructively possessed the fentanyl found in the back seat of the Malibu and on 11th Street. Argro also contends the evidence did not establish that he conspired with the other occupants of the vehicle to commit any crime. He maintains that the only evidence of a conspiracy was provided by Detective Skahill, who was not involved in the investigation at the

---

[2] In **Commonwealth v. Widger**, 2020 WL 4692334, at *2 (Pa. Super. filed Aug. 13, 2020) (citation omitted):

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier-of-fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

time of the initial stop or arrest and had no direct knowledge of a conspiracy between the occupants of the Malibu to sell fentanyl.

The Controlled Substance, Drug, Device and Cosmetic Act prohibits "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance." 35 P.S. § 780-113(a)(30) (defining the offense of PWID). Because police in the instant case did not recover the fentanyl from Argro's person, the Commonwealth was required to establish his constructive possession of the drugs.

> When contraband is not found on the defendant's person, the Commonwealth must establish "constructive possession," that is, the power to control the contraband and the intent to exercise that control. The fact that another person may also have control and access does not eliminate the defendant's constructive possession. . . . As with any other element of a crime, constructive possession may be proven by circumstantial evidence. The requisite knowledge and intent may be inferred from the totality of the circumstances.
>
> Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not.

**Commonwealth v. McClellan**, 178 A.3d 874, 878 (Pa. Super. 2018) (citations omitted).

A defendant commits the offense of criminal conspiracy "with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he: (1) agrees with such other person or persons

that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime[.]" 18 Pa.C.S. § 903(a)(1).

> The material elements of conspiracy are: (1) an intent to commit or aid in an unlawful act, (2) an agreement with a co-conspirator and (3) an overt act in furtherance of the conspiracy. An 'overt act' means an act done in furtherance of the object of the conspiracy. *See* 18 Pa.C.S. § 903(e). . . .

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy.

*Commonwealth v. Gross*, 2020 WL 2065574, at *13 (Pa. Super. filed Apr. 29, 2020) (*en banc*) (case citations omitted). We are also mindful that an actor's flight is relevant to proving a conspiracy because it tends to establish consciousness of guilt. *See Commonwealth v. Jordan*, 212 A.3d 91, 97 (Pa. Super. 2019).

Instantly, Trooper Magee testified to Argro's presence in the front passenger seat of the Malibu at the time of the traffic stop, in very close

- 7 -

proximity to where the fentanyl was recovered from the rear passenger side floor. The fentanyl discarded nearby on 11th Street, in the direction to which the other two occupants of the Malibu had immediately fled, one with a bag in his hand, was distinctive and was consistent with that found in the vehicle.

Detective Skahill testified to the extremely unique red packaging of the fentanyl found at both the vehicle and 11th street locations. The detective opined that the drugs were being trafficked based on the large quantity and dollar value of the fentanyl and lack of drug paraphernalia in the car. He also posited that the individuals involved trusted one another because of the inherent risk of the drug trade, given the possibility of robbery and law enforcement intervention.

The trial court could reasonably infer from this testimony that Argro constructively possessed the fentanyl and that he conspired with the other occupants of the Malibu to possess it with the intent to sell it. As the trial court explained:

> It is wholly unreasonable to believe that three individual adults would risk fleeing from the police because of a registration violation. Furthermore, it was reasonable to conclude that the drugs located a mere street over from the stop, on the same path that two of the occupants had fled, were in fact inside the vehicle at the time of the stop. Detective Skahill, a highly skilled and well qualified expert in the field, testified that the red bags "stuck out like a sore thumb." It is not consistent with typical dealer behavior, to be in a vehicle, traveling with $4000.00 dollars' worth of their product, with individuals that would have no idea of the circumstances. This was a concerted effort by all three individuals present to distribute the product, to devise a plan to flee once police became involved, and to discard whatever drugs they could while leaving the hidden contraband inside the back of the car.

(Trial Court Opinion, 4/27/20, at 8-9).

Considering the totality of the circumstances and viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we find that the evidence was sufficient to support Argro's conviction of PWID and conspiracy to commit the same. The evidence plainly demonstrated that Argro was an active participant in a conspiracy to possess the uniquely packaged high-value fentanyl with the other occupants of the Malibu with the intent to deliver it. Argro's sufficiency claim merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/26/20