J-S05003-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HENRY ELLIS BLAIR | : | |
| | : | |
| Appellant | : | No. 639 MDA 2019 |

Appeal from the Judgment of Sentence Entered March 6, 2019
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0005326-2017

BEFORE: SHOGAN, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.: **FILED JUNE 10, 2020**

Appellant, Henry Ellis Blair, appeals from the judgment of sentence entered in the Court of Common Pleas of Dauphin County. We affirm.

The trial court set forth the factual history of this case as follows:

> The following facts were established at a jury trial that took place on March 5, 2019. (Notes of Testimony, Jury Trial, 3/5/19).[6]
>
> [6] Hereinafter, "N.T."
>
> The Commonwealth presented the testimony of Officer Chad McGowan. (N.T., 3). On August 20, 2017, Officer McGowan was working the Street Crimes Unit. (N.T., 4). Officer McGowan was on patrol with Adult Probation Officer Bruce Cutter and in an unmarked vehicle. (N.T., 4). Officer McGowan and Probation Officer Cutter were patrolling the midtown portion of the city, in the area of 4th and Harris Street. (N.T., 4). They eventually made their way over to the 300 block of Harris Street. (N.T., 4). Officer McGowan saw two males standing next to a white Cadillac sedan. (N.T., 4). Eventually, the car drove away from the 300 block of Harris Street. (N.T., 5).

Officer McGowan continued to monitor the vehicle as it drove away. (N.T., 5). Set up in a surveillance position, Officer McGowan observed the vehicle begin driving on Harris Street with the driver. (N.T., 5). The vehicle quickly parked at a convenience store at the intersection of 4th and Harris Street. (N.T., 5-6). The operator left the vehicle then returned to the vehicle before driving away. (N.T., 6).

After the vehicle [drove] away, Officer McGowan left his parked position and began following the Cadillac sedan. (N.T., 6). Officer McGowan attempted to stop the vehicle with lights and sirens on for illegal window tint. (N.T., 6). The vehicle traveled a short distance, then eventually pulled over to the side of the road as if it was stopping for the traffic stop. (N.T., 6-7). At this point, the vehicle stopped momentarily then takes off at a high rate of speed. (N.T., 7). When the driver took off at a high rate of speed, Officer McGowan kept his lights and sirens on for a few moments, but because it was evident to him that the driver was not going to stop and comply, he discontinued the pursuit. (N.T., 7).

The vehicle eventually came to a stop. (N.T., 7). Officer McGowan saw the driver apply the brake lights and park the vehicle. (N.T., 7). Officer McGowan then quickly accelerate[d] to catch up to the vehicle. (N.T., 7-8). Appellant exited the vehicle from the driver's side and began to run on foot to the west of North 4th Street. (N.T., 7-8). Officer McGowan followed on foot. (N.T., 8). Officer McGowan chased Appellant through a grass lot to the west of North 4th Street and advanced towards Kelker Street. (N.T., 8). Officer McGowan was able to get a good look at Appellant's face and clothing. (N.T., 9).

Officer McGowan then observed Appellant dive and lay out beside an Escalade. (N.T., 9). Once Appellant was on the ground, Officer McGowan was able to close the distance between them. (N.T., 11-12). As Appellant was laying flat on the ground, Officer McGowan saw him place an object underneath the vehicle. (N.T., 12).

Appellant got up and continued to run as Officer McGowan followed. (N.T., 12). The pursuit led them to Logan Street. (N.T., 12). Appellant turned down Granite Street. (N.T., 12). Officer McGowan lost sight of Appellant. (N.T., 12). During this pursuit, Officer McGowan was radioing for other members of the street crimes unit to let them know what was going on. (N.T.,

13). After losing Appellant during the foot pursuit, Officer McGowan retraced the path of the pursuit to look for any evidence. (N.T., 14). Officer McGowan observed a knotted plastic baggie laying in the middle of Granite Street. (N.T., 14-15). The baggie was in excellent condition and had no signs or appearance of being weathered from prolonged exposure to the elements. (N.T., 17). Inside of the bag was an off-white chalky substance, which he knew to be consistent with crack cocaine. (N.T., 14). The baggie was sent to the Pennsylvania State Police Laboratory for testing. (N.T., 15).

Officer McGowan went back to the Escalade. (N.T., 17-18). He looked under the car and found a Smith and Wesson bodyguard, which is a .380 caliber semiautomatic pistol. (N.T., 18). The pistol was determined to be loaded with one round inserted in the chamber and an additional 13 (thirteen) rounds were placed in the firearm's high-capacity magazine which was placed in the firearm. (N.T., 21). The gun was submitted to the Pennsylvania State Police Bureau of Forensic Service. (N.T., 20). They conducted a functionality test to determine if the firearm was able to fire a projectile. (N.T., 21). It was determined that the firearm was functional. (N.T., 21). No fingerprints were found on the gun. (N.T., 55).

When Officer McGowan returned to the vehicle, Officer Cutter was on scene near the vehicle. Both officers began a search of the vehicle and found several items laying in and outside of the vehicle. (N.T., 21-22). Outside of the vehicle, a black T-Mobile cellular phone was found lying just outside the driver's door. (N.T., 22). Inside the vehicle, photographs and personal documents were found throughout the vehicle. (N.T., 23). One document was found in the trunk of the vehicle. (N.T., 27). Ten photographs were located in the center console storage area. (N.T., 27). Multiple photographs depicted Appellant posing. (N.T., 23-24). Officer McGowan was able to determine that the person in the photographs was the person he chased in a foot pursuit. (N.T., 24). Officer McGowan was able to obtain the name of Appellant through the person[al] documents found in the vehicle. (N.T., 25). These person[al] documents included a HACC student ID card, a document from Pennsylvania Department of Human Services addressed to Appellant with a Harrisburg address, a College Board Accuplacer, and a Riz Auto Service receipt. (N.T., 25-26).

Officer McGowan then found a phone number on many of the documents. (N.T., 27). Officer McGowan attempted to call the number listed on the bill. (N.T., 27). A male's voice on the line told the caller to dial another number, 379-[***]. (N.T., 27). When Officer McGowan dialed the other number, it was determined that the number belonged to the phone recovered from the outside of the driver's door of Appellant's vehicle. (N.T., 27).

One of the documents found in the vehicle contained Appellant's date of birth. (N.T., 25). Officer McGowan used this through the driver''s license center search that resulted in a driver's license photograph. (N.T., 26). Officer McGowan was able to determine that Appellant was the man that ran from him in the foot pursuit. (N.T., 26). Officers McGowan and Cutter ran the Appellant's name through PennDOT and JNET and confirmed that Appellant did not possess a valid permit for a concealed firearm and that Appellant did not have a license to drive a vehicle at the time due to a suspension. (N.T., 26).

The Commonwealth presented the testimony of Sergeant Tyron Meik. (N.T., 59). Sergeant Meik is a supervisor of the street crimes unit and the K-9 unit. (N.T., 59). On August 16, 2017, Officer Meik was conducting a search warrant. (N.T., 60). Officer Meik observed Appellant in the area at the time. (N.T., 60). He pointed Appellant out to Officer McGowan. (N.T., 60). Officer Meik was also working the night of August 20, 2017[,] when the foot pursuit took place. (N.T., 62). Back at the station that night, Officer McGowan showed Officer Meik a picture that Officer Meik recognized to be Appellant. (N.T., 62).

The Commonwealth then presented the testimony of William Kimmick, a forensic investigator. (N.T., 65). Mr. Kimmick is trained in fingerprints comparison. (N.T., 66). Mr. Kimmick processed the weapon found by Officer McGowan. (N.T., 67). No useable fingerprints were developed from the firearm. (N.T., 68).

Trial Court Opinion, 4/23/20, at 2-6.

The trial court summarized the procedural history of this matter as follows:

Following a jury trial held on February 12, 2019, the jury was hung, and another trial was held on March 6, 2019. Appellant was found guilty of Possession of a Firearm Prohibited,[1] Carrying a Firearm Without a License,[2] Driving While Operating Privilege is Suspended or Revoked,[3] and Fleeing.[4] On March 6, 2019, Appellant was sentenced. Appellant filed a Post-Sentence Motion on April 3, 2019[,] requesting credit for the Appellant's time served. This [c]ourt entered an Order granting Appellant's Post-Sentence Motion on April 5, 2019.

[1] 18 Pa.C.S.A. § 6105(a)(1)
[2] 18 Pa.C.S.A. § 6106(a)(1)
[3] 75 Pa.C.S.A. § 1543(a)
[4] 75 Pa.C.S.A. § 3733(a)

Following the granting of Appellant's Post-Sentence Motion, Appellant filed a *pro se* Notice of Appeal on April 8, 2019. On April 18, 2019, Appellant's trial counsel filed a Motion to Withdraw as Counsel. This [c]ourt granted the Motion on April 22, 2019. As such, this [c]ourt ordered Appellant on April 29, 2019, to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). This [c]ourt was ordered by the Superior Court to determine the Appellant's eligibility for court appointed counsel after Appellant filed a Motion for Appointment of Counsel on May 10, 2019. At that point in time, new counsel was appointed [for] Appellant.

On May 16, 2019[,] we entered a 1925(b) Order and the Appellant filed a Concise Statement of Matters Complained of on Appeal in accordance with Pa.R.A.P. 1925(b).[5] On May 20, 2019, we asked the Superior Court to extend the deadline to submit our Memorandum Opinion by thirty (30) days after a Concise Statement of Errors was submitted. On June 11, 2019, Appellant filed a request for an Extension to File Concise Statement of Errors Complained of on Appeal. On June 13, 2019, this [c]ourt granted said request. Appellant complied with the 1925(b) Order on June 18, 2019.

[5] Appellant's Concise Statement was filed by Attorney Jenni Chavis on behalf of the Appellant.

This [c]ourt filed its Memorandum Opinion on July 16, 2019. In our Pa.R.A.P. 1925(a) opinion, we concluded that Appellant's

claims could not be addressed due to the lack of trial transcripts in the certified record.

In [a judgment] order filed by the Superior Court of Pennsylvania on March 13, 2020, this [c]ourt was directed to complete a supplemental Pa.R.A.P 1925(a) opinion addressing the issue challenging the sufficiency of the evidence presented in Appellant's counseled brief.

Trial Court Opinion, 4/23/20, at 1-2. The trial court complied with our directive, and this matter is now ripe for disposition.

Appellant presents the following issue for our review:

1. Did the Commonwealth fail to present sufficient evidence to allow a jury to return a verdict of guilty on the charges of possession of firearm prohibited and carrying a firearm without a license?

Appellant's Brief at 7.

In his sole issue, Appellant presents a challenge to the sufficiency of the evidence to support his convictions of person not to possess a firearm and carrying a firearm without a license. Appellant's Brief at 13-17. In the argument section of his brief, Appellant argues the Commonwealth failed to prove that he constructively possessed the gun because there was no evidence that Appellant had dominion and control over the firearm. *Id*. at 15. Appellant contends that the Commonwealth failed to prove that Appellant was the person who allegedly secreted a firearm under the vehicle. *Id*. at 15-17.

Our standard of review is well established:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the

- 6 -

crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder['s]. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Estepp*, 17 A.3d 939, 943-944 (Pa. Super. 2011).

Appellant was convicted of violating the following two provisions of Pennsylvania's Uniform Firearms Act:

**§ 6105. Persons not to possess, use, manufacture, control, sell or transfer firearms.**

**(a) Offense defined.**—

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S. § 6105(a)(1).

**§ 6106. Firearms not to be carried without a license.**

**(a) Offense defined.**

(1) Except as [otherwise] provided … any person who carries a firearm in any vehicle or any person who carries a firearm

concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S. § 6106(a)(1).

Possession of a firearm is an essential element of Sections 6105 and 6106. However, to establish the element of possession, this Court has explained that "[p]ossession can be found by proving actual possession, constructive possession, or joint constructive possession." ***Commonwealth v. Parrish***, 191 A.3d 31, 36 (Pa. Super. 2018) (citation omitted*), appeal denied*, 202 A.3d 42 (2019). We previously have determined:

> Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

***Parrish***, 191 A.3d at 36–37 (internal citations and quotations omitted).

Thus, illegal possession of a firearm may be established by one's constructive possession thereof. ***Commonwealth v. McClellan***, 178 A.3d 874, 879 (Pa. Super. 2018). In addition, the power and intent to control

contraband does not need to be exclusive to an appellant in order to find constructive possession. Our Supreme Court has recognized that "constructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." **Commonwealth v. Johnson**, 26 A.3d 1078, 1094 (Pa. 2011) (citation omitted). Further, the Commonwealth was permitted to establish Appellant's constructive possession *via* circumstantial evidence and the reasonable inferences that arise therefrom. **Parrish**, 191 A.3d at 36–37.

The trial court addressed the evidence that established Appellant's possession of the firearm as follows:

> In this case, the Commonwealth presented evidence that Appellant possessed a firearm through the testimony of Officer McGowan. (N.T., 9-12). Officer McGowan testified that he saw Appellant lay flat on the ground during the foot chase and place something underneath an Escalade before running off again. (N.T., 12). After losing sight of Appellant during the chase, Officer McGowan returned to the vehicle that he saw Appellant place something under and found a Smith and Wesson pistol. (N.T., 9-12). Officer McGowan was not able to see what Appellant placed under the vehicle at the time, however he was able to immediately return to the vehicle and find the gun. (N.T., 9-12; 17-18). The Commonwealth presented sufficient evidence for a jury to believe beyond a reasonable doubt that Appellant possessed a firearm.

Trial Court Opinion, 4/23/20, at 8-9. We agree.

Under the totality of the circumstances, the evidence presented at the trial on March 5, 2010, viewed in the light most favorable to the Commonwealth as the verdict winner, established that Appellant constructively possessed the firearm that was found on the ground under the

Cadillac Escalade, where Appellant dropped to the ground as he interrupted his flight from police. Officer McGowan specifically stated that during the pursuit, he observed Appellant's face and his clothing. N.T., 3/5/19, at 9. In addition, Officer McGowan testified:

> So I'm giving chase. I'm chasing [Appellant] across a grass field and I see [him] leave his feet and literally dive hands first towards a parked [C]adillac Escalade on Kelker Street.
>
> * * *
>
> I've been a police officer for over seven years now. I've been involved in numerous foot pursuits. And I've never seen anything quite like this. I've never seen anyone in the midst of a foot pursuit leave their feet and dive like [Appellant] did.

*Id*. at 9-10. The officer further explained that he observed Appellant "reaching underneath the front passenger side tire of this Cadillac Escalade with his arms." *Id*. at 11. The officer stated, "After what I believed him to be plac[ing] an object underneath the vehicle, he then got to his feet and began running again." *Id*. at 12. After abandoning the pursuit, Officer McGowan returned to the vehicle and discovered a black semiautomatic pistol under the front passenger side tire. *Id*. at 17-18. This evidence proved that Appellant had the power to control the contraband and the intent to exercise such control, thereby establishing his constructive possession of the gun. Accordingly, Appellant's claim that the Commonwealth failed to present sufficient evidence to support these convictions lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 06/10/2020