J-A15045-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JERMAINE JOHNSON | : | |
| | : | |
| Appellant | : | No. 1913 EDA 2020 |

Appeal from the Judgment of Sentence Entered September 6, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002405-2015

BEFORE:  BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:　　　**FILED SEPTEMBER 27, 2021**

Jermaine Johnson ("Johnson") appeals from the judgment of sentence entered following his conviction of persons not to possess, use, manufacture, control, sell or transfer firearms ("persons not to possess").[1]  We affirm.

The trial court summarized the relevant history underlying the instant appeal as follows:

> On January 28, 2015, at 6:55 in the morning, [o]fficers responded to 9-1-1 calls for reported gunshots around 6058 Regent Street in the city and county of Philadelphia.  Outside [of] the property, [o]fficers found shell casings and a live rifle round. Upon knocking on the door, an older occupant also named Mr. Johnson [("Mr. Johnson")], of no relation to [Johnson], opened the door and [o]fficers saw an additional live rifle round[,] identical to the one outside[,] behind Mr. Johnson, inside [of] the residence.

---

[1] **See** 18 Pa.C.S.A. § 6105(a)(1).

Officers then entered the residence, which they learned to be a boarding house, and discovered [Johnson] upstairs in the bathroom with his girlfriend, Antionette Roberts [("Ms. Roberts")], in the shower. [Johnson] and Ms. Roberts then indicated an intention to enter the bedroom on the first floor, in the front of the building[,] to change their clothing so that they could leave the building. [An officer] asked them if the police could conduct a sweep of the bedroom to secure the room before they entered to change their clothing. [Johnson] and Ms. Roberts consented to the search of the room. The door had previously been unlocked and opened.

Upon [a] search of the room, a nine-millimeter black handgun was recovered. The gun was recovered from a bag inside a small mini-fridge inside the bedroom. At this time, the handgun was secured in the bedroom and a search warrant [was applied for, received and] executed. [Johnson subsequently was charged with the above-described offense.]

[Johnson] appeared before [the trial court] on January 3, 2018, and April 27, 2018[,] for a waiver trial, at the conclusion of which he was found guilty of [violating] Uniform Firearm Act § 6105, persons not to possess….

Trial Court Opinion, 12/28/20, at 1-2 (unnumbered) (citations omitted).

The trial court subsequently sentenced Johnson to three and one-half to seven years in prison, followed by two years of probation. Johnson timely filed a Notice of Appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Johnson presents the following claims for our review:

A. Did the [trial] court err in admitting the hearsay statements of [Ms.] Roberts and [Mr. Johnson] regarding the rooms where each person stayed in the house in question?

B. Was the evidence insufficient to sustain [Johnson's] conviction for [persons not to possess] in that the evidence failed to establish beyond a reasonable doubt that [Johnson]

constructively possessed the firearm in question[,] or was even aware of the presence of the firearm?

Brief for Appellant at 4.

Johnson first claims that the trial court improperly admitted the hearsay statements of Ms. Roberts and Mr. Johnson regarding the location of each resident's rooms in the boarding house. *Id.* at 9. Johnson asserts that, "[i]n allowing in the hearsay statements of the non-testifying witnesses, the trial court disregarded the rules against hearsay testimony and the accused['s] right to confront adverse witnesses." *Id.* Johnson argues that

> [t]he statements of the older Mr. Johnson were clearly hearsay. Although the words of the older Mr. Johnson were never used, the indirect implication of his statements [was] used as substantive evidence in this matter. Specifically, the inference that the older Mr. Johnson only had access to the upper room[,] and lacked access to the room on the first floor, was made available by the trial court allowing the officer to state that he searched a specific room based upon a statement made by the gentle[man] who opened the door.

*Id.* at 11. Johnson argues that this evidence went "directly to access and control" of the firearm at issue. *Id.* According to Johnson, because Mr. Johnson did not testify at trial, Mr. Johnson could not be impeached as to his access to the room on the first floor. *Id.* Johnson asserts that the reference to Mr. Johnson's statement was substantive in nature and should have been

excluded as hearsay. *Id.* Further, Johnson argues that the admission of this evidence caused him prejudice.[2] *Id.* at 11-12.

In its Opinion, the trial court set forth the relevant law, addressed Johnson's claim, and concluded that it lacks merit. *See* Trial Court Opinion, 12/28/20, at 4-6 (unnumbered). We agree with the sound reasoning of the trial court, as set forth in its Opinion, and affirm on this basis with regard to Johnson's first claim. *See id.*;[3] *see also Commonwealth v. Fitzpatrick*, 2021 Pa. LEXIS 3164, at *2 (Pa. filed July 23, 2021) (recognizing that, "if the statement is intended to be used for some purpose other than establishing its truth—*i.e.*, to show the effect that the statement had on the listener[,] … then it would not be hearsay and, consequently, would be admissible for that non-truth purpose, subject to any other applicable evidentiary rules."); *Commonwealth v. Dent*, 837 A.2d 571, 582 (Pa. Super. 2003) (stating that trial judges, sitting as fact finders, are presumed to ignore prejudicial evidence in reaching a verdict, and to have disregarded inadmissible hearsay testimony).

---

[2] In the Argument section of his brief, Johnson provides no further argument regarding the alleged hearsay statements of Ms. Roberts.

[3] Further, such evidence would be admissible to explain the officers' course of conduct. *Commonwealth v. Estepp*, 17 A.2d 939, 945 (Pa. Super. 2011) (recognizing that "an out-of-court statement offered not for its truth but to explain the witness's course of conduct is not hearsay and thus, is not excludable under the hearsay rule." (citation and internal quotation marks omitted)).

In his second claim, Johnson challenges the sufficiency of the evidence underlying his conviction of persons not to possess. Brief for Appellant at 12. Johnson argues that, because the firearm was not found on his person, the Commonwealth was required to prove that he constructively possessed the firearm. *Id.* at 13. Johnson asserts that the Commonwealth presented no evidence that he knew that a firearm was in the refrigerator, or even in the room. *Id.* at 14. According to Johnson, he provided unequivocal testimony that he did not live at the residence and would only stay there "from time to time." *Id.* Johnson points out that police found no clothing, shoes, identifications cards or any other evidence that he lived at the residence. *Id.* Further, Johnson directs our attention to the sworn Affidavit of Ms. Roberts that she, in fact, owned the weapon, and that Johnson did not live at the residence. *Id.* Johnson asserts that the Commonwealth solely relied on one

piece of mail addressed to him at the residence,[4] and his mere presence at the residence on the day in question. *Id.* at 14-15.

In reviewing a challenge to the sufficiency of the evidence,

[t]he standard we apply … is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Fabian*, 60 A.3d 146, 150-51 (Pa. Super. 2013) (citation omitted). "This standard of deference is not altered in cases involving a bench trial, because the province of a trial judge sitting without a jury is to do what a jury is required to do." *Commonwealth v. Lee*, 956 A.2d 1024, 1027 (Pa. Super. 2008) (internal quotation marks and citation omitted).

---

[4] At trial, Philadelphia Police Detective Robert Conway ("Detective Conway") testified regarding his execution of the search warrant at 6058 Regent Street. N.T., 4/27/18, at 57. Detective Conway testified that he recovered a piece of mail addressed to Johnson at 6058 Regent Street address. *Id.* at 61. That piece of mail was from the District Attorney's Office. *Id.*

To establish the crime of persons not to possess firearms, the Commonwealth must prove that the defendant was convicted of an offense enumerated under subsection (b) of the statute, and possessed, used, controlled, sold, transferred, or manufactured or obtained a license to use, control, sell, transfer, or manufacture a firearm. *See* 18 Pa.C.S.A. § 6105(a)(1).

Johnson does not dispute that he was convicted of an offense enumerated under subsection 18 Pa.C.S.A. § 6105(b). In reviewing whether the evidence established Johnson's possession of the firearm, we are cognizant that,

> [w]hen contraband is not found on the defendant's person, the Commonwealth must establish "constructive possession," that is, the power to control the contraband and the intent to exercise that control. The fact that another person may also have control and access does not eliminate the defendant's constructive possession …. As with any other element of a crime, constructive possession may be proven by circumstantial evidence. The requisite knowledge and intent may be inferred from the totality of the circumstances.

*Commonwealth v. McClellan*, 178 A.3d 874, 878 (Pa. Super. 2018) (citations omitted). "Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." *Id.*

In its Opinion, the trial court addressed Johnson's claim and concluded that it lacks merit. *See* Trial Court Opinion, 12/28/20, at 6-8 (unnumbered). We agree with the sound reasoning of the trial court and affirm on this basis with regard to Johnson's challenge to the sufficiency of the evidence. *See id.*

Judgment of sentence affirmed.

Judge Bowes joins the memorandum.

Judge Stabile concurs in the result.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/27/2021

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL SECTION

COMMONWEALTH OF PENNSYLVANIA     :     CP-51-CR-0002405-2015

:

vs.     :

:

JERMAINE JOHNSON     :

<u>OPINION</u>

Perez, J.

## PROCEDURAL AND FACTUAL HISTORY

On January 28th, 2015 at 6:55 in the morning, Officers responded to 9-1-1 calls for reported gunshots around 6058 Regent Street in the city and county of Philadelphia. *Notes of Testimony*, 4/27/18 at 8, 15, 74; *Notes of Testimony*, 1/3/18 at 9, 14. Outside the property, Officers found shell casings and a live rifle round. *Notes of Testimony*, 4/27/18 at 8. Upon knocking on the door, an older occupant also named Mr. Johnson, of no relation to the defendant, opened the door and Officers saw an additional live rifle round identical to the one outside behind Mr. Johnson, inside the residence. *Id.* at 10.

Officers then entered the residence, which they learned to be a boarding house, and discovered the Defendant upstairs in the bathroom with his girlfriend, Antoinette Roberts, in the shower. *Id.* at 13, 20. The Defendant and Ms. Roberts then indicated an intention to enter the bedroom on the first floor, in the front of the building to change their clothing so that they could leave the building. *Id.* at 14, 20. The Officer asked them if the police could conduct a sweep of the bedroom to secure the room before they entered to change their clothing. *Id.* at 20. The

Defendant and Ms. Roberts consented to the search of the room. *Id.* The door had previously been unlocked and opened. *Id.*

Upon search of the room, a nine-millimeter black handgun was recovered. *Id.* at 21. The gun was recovered from a bag inside a small mini-fridge inside the bedroom. *Id.* at 49-51. At this time, the handgun was secured in the bedroom and a search warrant was executed. *Id.* at 52, 57.

The Defendant appeared before the Honorable Mia R. Perez on January 3, 2018, and April 27, 2018 for a waiver trial, at the conclusion of which he was found guilty of Uniform Firearm Act §6105, persons not to possess, use, manufacture, control, sell or transfer firearms.

The Defendant filed a notice of appeal on December 07, 2019, however, counsel for Defendant failed to file a brief and the appeal was dismissed. This trial court reinstated Defendant's appellate rights *nunc pro tunc*. The Defendant again filed a notice of appeal on October 7, 2020 and filed a 1925(b) Statement of Errors Complained of on Appeal on November 5, 2020.

This trial court opinion follows.

## ISSUES PRESENTED

In his Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, Appellant cites the following issues for review:

1. Did the lower court err in admitting the hearsay statements of Antoinette Clark and the other occupant of the house regarding the rooms where each person stayed in the house in question?

2. Was the evidence insufficient to sustain defendant's conviction for possession of a firearm prohibited in that the evidence failed to establish beyond a reasonable doubt that defendant constructively possessed the firearm in question or was even aware of the presence of the firearm?

## STANDARD OF REVIEW

The admission of evidence is committed to the sound discretion of the trial court and an appellate court may reverse only upon a showing that the trial court clearly abused its discretion. *Commonwealth v. Bardo*, 709 A.2d 871,878 (Pa. 1998).

In evaluating the sufficiency of the evidence, a reviewing Court will determine:

> whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.

*Commonwealth v. Jackson*, 485 A.2d 1102, 1103 (Pa. 1984).

## ANALYSIS

1. Did the lower court err in admitting the hearsay statements of Antoinette Clark and the other occupant of the house regarding the rooms where each person stayed in the house in question?

Hearsay is not admissible unless an exception applies under the Rules of Evidence. Pa.R.E. 802. Hearsay is defined as "in court evidence of an out-of-court declaration, whether oral or written, which is offered to show the truth of the out-of-court assertion" *Woodard v. Chatterjee*, 827 A.2d 433,444 (Pa. Super. 2003). An out-of-court statement that is admitted for its effect on the listener is not hearsay. See *In re Shahan*, 631 A.2d 1298, 1304 (Pa. Super. 1993) (stating, "[s]ince the statement was not admitted for its truth, but rather its effect on the listener, the statement was not hearsay.").

The Defendant first challenges the purported hearsay statements of Antoinette Roberts[1]. On direct examination. Sergeant Davis testified that he approached 6058 Regent Street when he saw a live rifle round on the ground in front of the property and spent shell casings on the front porch, and was met at the front door by an older gentleman named Mr. Johnson. *Notes of Testimony*, 4/27/18 at 8-9. Sergeant Davis could see another live rifle round on the steps behind Mr. Johnson, so he began securing the house as part of a crime scene. *Id.* at 10. As the Sergeant walked up the stairs, the Defendant emerged from the bathroom and asked what was going on. *Id.* at 12. The Defendant informed Sergeant Davis that Ms. Roberts was in the shower, the Sergeant confirmed her presence, and both individuals were asked to come downstairs. *Id.* at 13. Sergeant Davis learned from the older gentleman and the Defendant that the house was a boarding home with tenants renting individual rooms. *Id.* at 14. The Sergeant testified that, while downstairs, he was "talking to each person trying to figure out where they're staying, what rooms they're in so I know what rooms we have access to and what rooms we don't have access to. And so we continue to check. Like I stated, this defendant and the female both said first

---

[1] The Defendant names Antoinette Clark in his Statement of Errors, however this court believes this is in error. All evidence indicates that the woman in the home with the Defendant was named Antoinette Roberts. Accordingly, for the purposes of this analysis, this Court will address the statements of Antoinette Roberts.

floor..." *Id.* Defense counsel objected to this testimony as hearsay. *Id.* This Court allowed the testimony only for the purpose of showing the effect of Ms. Roberts's statements on the Sergeant in his investigation, and not as substantive evidence of the Defendant's potential residence. *Id.* at 14-15.

The Defendant next challenges the purported hearsay statements of the "other occupant of the house." This trial court is assuming the Defendant is referring to the older gentleman named Mr. Johnson. In describing his approach to 6058 Regent Street, Officer Fitzgerald testified on direct examination that he had spoken with an older gentleman upon his arrival. *Notes of Testimony*, 1/3/18 at 13. The Officer initially testified that "the older gentleman said [the property] was a rooming house and multiple people had lived there. He told us he lived up on the..." *Id.* At this point, defense counsel objected to the statements as hearsay and this Court sustained that objection. *Id.* The Commonwealth then explained that the statements were being offered for their general effect on the listener, Officer Fitzgerald, and his approach to the search of the property, rather than as separate substantive evidence of the Defendant's specific residence. *Id.* The court allowed the statements for that limited purpose.

Throughout each officer's testimony, this Court remained cognizant of the difference between hearsay evidence and offering the statements for their effect on the listener. This Court did sustain objections to any testimony that was substantive in nature and not illustrative of the effect on the listener. For example, when Officer Fitzgerald was asked if he recalled exactly what the defendant said in regard to the first-floor front bedroom, he replied, "I don't recall. He made me believe he lived in the front room of the house." *Notes of Testimony*, 1/3/18 at 19. Defense Counsel's objection was sustained. *Id.* Further, Sergeant Davis testified that while he was asking each person what room they were staying in, the Defendant "told me he was staying in the front

floor -- first floor front, the female stated the same." *Notes of Testimony*, 4/27/18 at 15. Defense Counsel's objection was sustained as to the female, Ms. Roberts. *Id.* at 16.

This Court did not abuse its discretion or err in allowing testimony regarding Ms. Roberts's and Mr. Johnson's statements where such testimony was used for its effect on the officers in their search procedures, and not as evidence proving the Defendant's residence as the first-floor, front bedroom.

2. Was the evidence insufficient to sustain defendant's conviction for possession of a firearm prohibited in that the evidence failed to establish beyond a reasonable doubt that defendant constructively possessed the firearm in question or was even aware of the presence of the firearm?

Constructive possession has been defined by the courts as "an inference arising from a set of facts that possession of the contraband was more likely than not." *Commonwealth v. Kinard*, 95 A.3d 279, 292 (Pa.Super.2014). Further, it is "the power to control the contraband and the intent to exercise that control." *Id.* "To aid application, [the Superior Court has] held that constructive possession may be established by the totality of the circumstances." *Id.* "[I]t is possible for two people to have joint constructive possession of an item of contraband." *Id.*

Officer Marcus found the firearm inside the refrigerator in the first-floor front bedroom while conducting a protective sweep and immediately informed Sergeant Davis, who was standing just outside the room with the Defendant and Ms. Roberts. *Notes of Testimony*, 4/27/18 at 49-50. Although the statements of the other resident and Ms. Roberts were not admitted as substantive evidence of where the Defendant lived, other admissible evidence established that the Defendant and Ms. Roberts were residing in the room in which the firearm was found.

The Defendant testified on direct examination that he had been romantically involved with Ms. Roberts for two years and stayed with her at that address "from time to time" throughout those two years. *Id.* at 87-88. During a recorded prison phone call between the Defendant and an unidentified male, the Defendant stated, "[y]ou know me and Nette live together." *Ex.* C-14. Detective Dougherty testified that during an interview of the Defendant for an unrelated matter, which occurred about three weeks prior to the incident giving rise to the instant charge, the Defendant told the Detective he lived at 6058 Regent Street and that Antoinette Roberts was his girlfriend. *Id.* at 73-75. This interview was memorialized in a document marked as C-13 and admitted into evidence. Sergeant Davis consistently testified that the Defendant stated that he lived in the first-floor, front bedroom of that house before the firearm was found. *Notes of Testimony*, 4/27/18 at 13, 15, 22. Further, the Sergeant testified that the Defendant began telling the investigating officers that he lived at a different location only after the firearm was recovered. *Id.* at 41. Officer Fitzgerald, Officer Marcus, and Sergeant Davis each testified that the Defendant and Ms. Roberts sought access to the first-floor front bedroom in order to get dressed to leave the house. *Notes of Testimony*, 1/3/18 at 21; *Notes of Testimony*, 4/27/18 at 19-20, 54. Detective Conway testified that he recovered a letter addressed to the Defendant at that address from that bedroom. *Notes of Testimony*, 4/27/18 at 62. The letter was marked as C-7 and admitted into evidence. This Court, in its discretion, viewed the collective testimony as substantive evidence establishing the Defendant was residing in the room where the firearm was found.

This finding of residence in the room, in conjunction with all other evidence, supports a finding that it was more likely than not that the Defendant possessed the firearm. The fact that constructive possession of the firearm may also be found as to Ms. Roberts does not preclude a

finding of constructive possession as to this Defendant. Therefore, the evidence is sufficient to sustain the Defendant's conviction for possession of a firearm prohibited.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the trial court's verdict and sentence be affirmed.

BY THE COURT:

Judge Mia Roberts Perez

Dated: 12-28-2020